[No. 10819. Department One. April 1, 1913.]

WILLIAM J. HAMMONS *et al.*, *Respondents*, v. J. J. SETZER, *Appellant*, LOUIS E. WATTAM *et al.*, *Defendants.*[1]

MASTER AND SERVANT—RELATION — EXISTENCE OF AGENCY — EVIDENCE—QUESTION FOR JURY. The question of the agency of an employee of the owner of a grocery store, rendering the employer liable for injuries sustained when the employee, driving an automobile delivery truck, ran into and injured a pedestrian, is for the jury, where it appears that the automobile started out on a demonstration trip in charge of the selling agent, to make a delivery of groceries, and there was evidence that the grocery man instructed the agent to show the employee how to run the machine, and "all about it," as he was "the man who would run it" if purchased (MOUNT, J., dissenting).

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $1,500 for personal injuries, sustained by a pedestrian struck by an automobile, will not be held excessive, where one rib was broken, his back weakened, he was unable to work at his previous employment, suffering a loss of $1.50 per day, and had sustained a loss of $567 in wages.

[1]Reported in 130 Pac. 1141.

Appeal from a judgment of the superior court for What-com county, Hardin, J., entered May 18, 1912, upon the verdict of a jury rendered in favor of the plaintiffs, for the sum of $1,500, for personal injuries sustained by a pedestrian run down by an automobile. Affirmed.

*C. A. Swartz (Hadley, Hadley & Abbott,* of counsel), for appellant.

*Neterer & Pemberton,* for respondents.

CHADWICK, J.—Appellant Setzer conducts a grocery store in the city of Bellingham, and delivers goods to his customers in the city and its suburbs. This he does with a delivery wagon and horses driven by one George Lee. This method seemed archaic and wasteful of time to defendant Louis E. Wattam, who sold automobiles for the Northwest Automobile Company, of Portland, Oregon, on commissions to be paid out of the purchase price; and in the course of time, that is, on the 17th day of June, 1911, he called on appellant and suggested the need of an automobile delivery truck in his business. It was arranged that a "demonstration" would be had on the morrow; that Wattam would send a truck and a driver to the store, and would make a delivery of goods at Geneva, a hamlet some four miles away on the shore of Lake Whatcom. Lenhart, the driver, and Lee loaded the truck and started on the way. While they disagree as to who was the principal, it is certain that Lee was to show the driver where to deliver the goods. Returning, Lenhart showed Lee "which was high and which was low, and where the gas and spark was." Lee finally took the wheel, he says in obedience to his own impulse to experiment with the thing. He had driven a distance of about two city blocks when he came upon respondent, who was walking along the side of the road, the path being little more than two feet outside the wagon track and between it and the shore of the lake. For some reason—Lenhart and Lee are not quite agreed—Lee lost his control, or his head

—there seems to be an impulse on the part of novices to drive into everything in sight—and drove square into respondent, who fell headlong into the lake and over an uprooted stump, with the machine after and pressing upon him. The stump rolled so as to relieve the pressure. Lenhart stopped the machine, and respondent was extricated. He suffered a fracture of at least one rib, and was injured so that his back has been weak, rendering him unable to follow his avocation of a kneebolter, and compelling him to accept less remunerative employment. Action was brought against all parties, a verdict was rendered in favor of Wattam and Lenhart, and against Setzer. The verdict is attacked because, as it is alleged, there was no sufficient showing of agency.

When Lee came in the night before and had checked up his accounts and turned in his orders, appellant told him that he "need not hitch up in the morning, as there would be an automobile down here to take the groceries out, and if that fellow knows where the customers are you can work in the store that morning." Lenhart testifies, and it is the testimony upon which the verdict rests, as follows:

"Q. Why did you let Mr. Lee run the automobile? A. I was instructed to show him how to run the machine. Q. Who instructed you? A. Mr. Setzer said the man that was going along was the man to run the machine and to show him all about it. Q. Mr. Setzer said that to you? A. Yes, sir. Q. And to show him all about it? A. Yes, sir. Q. He specially said 'This man is to run the machine and show him all about it?' A. He said the man that went was the man that was going to run the machine if he got it and to show him all about it . . . Q. He said he was the man who would have to run it if we buy it and I want you to show him all about it? A. Yes, sir."

This, it is contended, does not show an agency nor fasten any responsibility upon appellant. We think, however, that the question was one for the jury. Agency is often a mixed question of law and fact. This court has frequently held that, where the evidence is conflicting, it is a question for the jury.

But it is said that, because the following question put to Lenhart, "You were not instructed to let him run it, is that a fact?" was answered, "Yes, sir," the verdict cannot stand, as the evidence would thereby show that he exceeded his authority, and would himself become responsible for the consequences. The answer may bear that construction, but taken with the testimony which we have quoted and that of other witnesses, we think the jury was warranted in finding as it did. When appellant said that Lee was the man who was going to run the machine if he got it, and "to show him all about it," it is not for us to say that he was not warranted in turning the machine over to Lee. If I ask a man to show my boy how to swim, "all about it," I should not be heard to complain if he takes him in the water.

Other errors are assigned. They are predicated upon inconsistencies in the pleadings, upon instructions given, and the refusal of the court to submit special interrogatories. Upon the theory that a person may be an agent of two persons at the same time, the complaint was sufficient to pass the objections made to it. The exceptions to the instructions were all made for the purpose of saving the questions we have discussed. The interrogatories which were refused by the court were, so far as material, covered by the general verdict, and the discretion of the court was not abused.

It is complained that the verdict was so excessive as to indicate passion and prejudice. Respondent was unable to work at all for one month, and has been unable to work at kneebolting, suffering a loss in difference of wages of $1.50 per day. There is some evidence to sustain the finding of the jury that his condition may continue for a time. He suffered considerable pain, and paid out $25 in doctor's bills.

The verdict seems unreasonable in the light of all the evidence, for had the writer been on the jury he would have said that the injuries were not continuing or permanent; but the jury saw the respondent; the verdict has been passed by the trial judge; he has shown a loss in wages of $567, which

may continue. This, coupled with the money paid out and an allowance for pain and suffering, may sustain the verdict. At any rate the excess, if any, is not so clear as to warrant our interference.

Judgment affirmed.

CROW, C. J., GOSE, and PARKER, JJ., concur.

MOUNT, J. (dissenting)—I dissent. The appellant neither owned nor operated the automobile. The carelessness which caused the injury was the carelessness of the owner or person operating the machine. The appellant was not present and had not authorized the operator to teach his clerk how to run the car. He had not even agreed to buy the car. It is most unjust to hold him for the damage in this case.