[No. 15193.  Department Two.  May 13, 1919.]

## N. C. LLOYD, *Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant.*[1]

NEGLIGENCE (22-1—24) — IMPUTED NEGLIGENCE—SERVANTS—SCOPE OF EMPLOYMENT.  In an action for injuries sustained at a railroad crossing through the concurrent negligence of the company and the driver of the car, it cannot be said, as a matter of law, that the driver, who was employed as a farm hand, was not acting in the course of his employment so that his contributory negligence would be imputable to his employer, where it appears that, although it was Sunday and he was taking a young lady for a ride, he stopped at the express office to procure an express package addressed to his employer, as he had done on other occasions without express direction to do so.

BAILMENT (3) — NEGLIGENCE (22-1—24) — IMPUTED NEGLIGENCE — SERVANT OR BAILEE.  Where a farm hand was, on Sunday, driving his employer's automobile for his own pleasure, when it was struck at a railroad crossing, his relation was that of a bailee, and his own contributory negligence is not imputable to the owner and is no

[1]Reported in 181 Pac. 29.

defense to an action against the company, although he was employed at "so much a month and had the use of the car."

CHADWICK, C. J., dissents.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered September 14, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages to an automobile, struck by a train at a crossing. Affirmed.

*Cannon & Ferris* and *Edward A. Davis,* for appellant.

*M. L. Driscoll,* for respondent.

PARKER, J.—The plaintiff, Lloyd, seeks recovery of damages for injury to his automobile, claimed to have been caused by the negligent operation of one of the trains of the defendant railway company, at a public crossing in the village of Eltopia, in Franklin county. Trial in the superior court for that county, sitting with a jury, resulted in verdict and judgment in favor of the plaintiff, from which the defendant has appealed to this court.

Respondent's automobile was being driven by Richard Colley, on Sunday, June 24, 1917, when it was struck by one of appellant's trains, causing the injury thereto for which recovery is sought. For a period of some three months prior thereto, Colley had been working for respondent upon his farm, situated some two miles distant from Eltopia, under an employment agreement by which Colley was to receive a certain sum per month, and the use of the automobile for his own pleasure, from time to time, as occasion therefor might arise. During the afternoon of the Sunday in question, Colley took a young lady for a pleasure ride in the automobile. Just what their destination was is not clear; but upon their return they went a short

distance out of their way, with a view, on the part of
Colley, of going through Eltopia, and calling upon the
railway company's agent there and procuring an ex-
press package which he thought might be there for
respondent.  He had not been instructed by respond-
ent to call for any such package; nor is there any-
thing in the record to show that either he or respond-
ent thought of his calling upon the agent of the rail-
way company for any such package when he started
with the automobile.  He had, however, on some pre-
vious occasions, brought packages from the agent of
the railway company which had been shipped to El-
topia in respondent's name.  This he had done with-
out any special instructions from respondent.  Upon
this occasion, Colley received from the agent a pack-
age addressed to respondent, and placed it in the auto-
mobile, when he and the young lady proceeded in the
automobile on their way towards respondent's farm,
which rendered it necessary for them to cross appel-
lant's track in Eltopia; and it was while so crossing
the track that the automobile was injured by being
struck by one of appellant's trains.  While the jury
returned a general verdict in favor of respondent,
awarding him damages in the sum of $450, the jury
were also asked, and answered, special interroga-
tories submitted by the court, as follows:

"Interrogatory 1:  Was there negligence on the
part of the Northern Pacific Railway Company, which
negligence was the proximate cause of the damage to
plaintiff's automobile?  Answer: Yes.

"Interrogatory 2:  Was there negligence on the part
of Richard F. Colley, the driver of the automobile,
contributing to the damage to the plaintiff's auto-
mobile?  Answer: Yes.

"Interrogatory 3:  At the time of the collision was
Richard F. Colley driving or using the automobile for
or on behalf of the plaintiff, N. C. Lloyd, or in con-

nection with the plaintiff's business, or in the course of his employment as an employee of the plaintiff? Answer: No.

"Interrogatory 4: At the time of the collision, was Richard F. Colley driving the automobile for private purposes or for his own pleasure? Answer: Yes."

A motion for judgment in appellant's favor, notwithstanding the verdict, was timely made by its counsel, the denial of which by the trial court is assigned as error.

The first contention made in appellant's behalf is, in substance, that the evidence conclusively shows that Colley was, at the time of the injury of the automobile, acting in the course of his employment for respondent, so that his contributory negligence thereby became the contributory negligence of respondent preventing his recovery, and that the trial court should have so decided as a matter of law. It seems to us that, under the circumstances here shown, the question whether or not the driving of the automobile at the time it was injured was being done by Colley as the agent and employee of respondent, or was being done by him for his own private purpose and pleasure, was a question for the jury to decide. Aside from the fact that Colley procured from the railway company's agent the package for respondent, and had it in the automobile when it was injured, there seems to be but little room for arguing that he was at that time doing anything other than for himself. And we think the mere fact that he had procured the package just before the automobile was injured, and then had it with him in the automobile, did not so plainly render his driving the automobile at the time it was injured the performance of his duties as respondent's employee that it could be so decided as a matter of law. The jury we think might, under all the circumstances,

have well concluded that Colley's procuring of the package was a mere matter of accommodation, as if such act had been performed by a neighbor. Our conclusion upon this branch of the case finds support in our decisions in *Hammons v. Setzer,* 72 Wash. 550, 130 Pac. 1141; *George v. Carstens Packing Co.,* 91 Wash. 637, 158 Pac. 529, and *Warren v. Norguard,* 103 Wash. 284, 174 Pac. 7.

It is further contended in appellant's behalf that the contributory negligence of Colley, as found by the jury, was in any event imputable to respondent, preventing his recovery, and that the trial court should have so decided as a matter of law. This contention is rested upon the theory that, because of the relationship between Colley and respondent with reference to the automobile, though it only be that of bailor and bailee, respondent cannot recover for the injury to the automobile, because Colley's contributory negligence would prevent his recovery for injury to the automobile. There was a time when the decisions of the courts seemed to support this view of the law; but in recent years, the weight of authority is, we think, decidedly to the contrary.

In view of the special finding of the jury that Colley was, at the time the injury to the automobile occurred, driving it for his own pleasure, and not in the course of his employment as respondent's employee, which finding we think the evidence fully supports, it seems plain that the relation then existing between him and respondent with reference to the automobile was merely that of bailor and bailee. Van Zile, Bailments (2d ed.), §§ 3 and 4; 6 C. J. 1101; 3 R. C. L. 72. Whether the automobile was in legal effect hired to Colley or gratuitously loaned to him, we think is of no moment here, since Colley would be no more the agent of respondent in one case than in the other.

In *Gibson v. Bessemer & L. E. R. Co.*, 226 Pa. 198, 75 Atl. 194, 27 L. R. A. (N. S.) 689, there was involved the hiring of a horse from a livery stable keeper, and the killing of the horse by the railroad company while being driven by the bailee. The railroad company resisted the claim of damage made by the owner for the killing of the horse, upon the ground of the bailee's contributory negligence in driving upon the track. Holding that the negligence of the bailee was not attributable to the bailor, the owner of the horse, preventing his recovery, Justice Potter, speaking for the court, observed:

"And in Edwards on Bailments (3d ed., 1893), sec. 392, it is said: 'The hirer of wagons, or carriages and horses, receiving them into his custody to be used by him at his pleasure, becomes a bailee, and is in no sense a servant of the owner. He is responsible to the owner for the reasonable care of them, and to third persons for any negligence of his servants in the use of them. He is liable to third persons to the same extent as if he were the actual owner of the vehicles and teams used by him.' And again, in 1 Thompson on Negligence (1901), sec. 512, it is said: 'Unless the principles upon which the courts have at last settled have been grossly misconceived, the negligence of a bailee or his servants is not imputable to his bailor.' As far back as the case of *Bard v. Yohn*, 26 Pa. 482, Justice Knox stated the law as follows (p. 489): 'If one lets or hires to another a horse to be used exclusively for the purposes of the latter, the owner of the horse is in nowise responsible for the negligent manner in which the horse may be used.'

"There is a difference where the owner sends a driver to manage and control the team and vehicle, for in so doing the owner retains the control, and may well be held accountable for the action of the driver, his servant and agent. But in the present case no driver was furnished and the hirer assumed the care and control of the horse. There was no relation of

master and servant, or of principal and agent between the hirer and the liveryman, and the latter cannot be held responsible for the negligence of the former. Each must recover in his own right, if at all, and each must stand upon his own ground. Had Lantz, the hirer, brought suit and shown negligence by the defendant, and no negligence upon his own part, he could have recovered for damage to himself, but not for damage to the horse or vehicle. His right of action depended in no way upon that of the present plaintiff, nor does the right of recovery in the present action depend upon the right of the bailee to recover.''

In *New York, L. E. & W. R. Co. v. New Jersey Elec. R. Co.*, 60 N. J. L. 338, 38 Atl. 828, 43 L. R. A. 849, there was involved a bailment arising out of the hiring of cars which were injured in a collision resulting from the concurring negligence of the bailee and the defendant company. It was sought by the defendant company to escape liability to the bailor, the owner of the cars, upon the ground of the bailee's contributory negligence being in law imputed to the bailor. In concluding an exhaustive and well considered opinion, Justice Lippincott, speaking for the New Jersey court of appeals, said:

''I cannot perceive that whether, in respect to this action, the duty of the defendant and the bailee were joint or separate can make any difference. If the same duty of care was due and owing to the plaintiff, then a common neglect of that duty would render them both liable as joint tort feasors. If the duty to plaintiff was a separate one which was neglected to be performed by each of them, although the duties were diverse and disconnected, and the negligence of each was without concert, if such neglects concurred and united in causing the injury, the tort still is equally joint, and the tort feasors are subject to a like liability. *Matthews v. Delaware, L. & W. R. Co.*, 27 Vroom 34. The bailee was bound to use reasonable care and diligence in the preservation of the property from in-

jury. The defendant, in the operation of the electric car, was bound to exercise reasonable care in avoiding injury to the property of which the plaintiff was the owner. It would seem that the intervention of the negligence of the bailee could not shield the defendant from injury caused by its own negligence. Both might have been selected as joint tort feasors, or the action could be maintained against either. The conclusion reached is that the plaintiff had the right to sue either or both of these companies for the injuries arising from their negligence to the locomotive and cars of the plaintiff, and it is not a defence to the action that the accident was contributed to by the negligence of the other. Each is liable upon its own negligence, and the negligence of the bailee is not imputable to the plaintiff as a shield to the defendant against recovery.''

In *Sea Insurance Co. v. Vicksburg, S. & P. R. Co.,* 159 Fed. 676, 17 L. R. A. (N. S.) 925, the Federal Circuit Court of Appeals for the Fifth Circuit had under consideration a bailment consisting of the leaving of cotton with a compress company, to be bailed. In holding that the loss of the cotton by fire, resulting from the negligence of the railway company, contributed to by the negligence of the bailee, would not prevent recovery by the insurance company as assignee of the bailor, Judge Shelby, speaking for the court, said in part:

''A plaintiff cannot recover damages for an injury to which he has directly contributed by his own negligence. If the plaintiff's own fault, whether of commission or omission, has materially contributed to the injury, the plaintiff is without remedy against one also in the wrong. The converse of this doctrine ought to follow as a necessary corollary—that when one has been injured by the wrongful act of another, to which he has in no way contributed, he should be entitled to compensation from the wrongdoer, unless the negligence of someone towards whom he stands in the rela-

tion of principal or master has materially contributed to the injury. The bailor, we hold, is not the principal or master of the bailee.''

In *Spelman v. Delano*, 177 Mo. App. 28, 163 S. W. 300, the court had under consideration a bailment in substance the same as that which is here involved; that is, it was the case of a farm hand having the use for his own pleasure of a horse belonging to his employer. While he was riding the horse, it was killed by the railway company of which the defendant was receiver, the death of the horse being the result of the negligence of the railway servants and the contributory negligence of the farm hand, the bailee. Holding that his contributory negligence was not imputable to the bailor, his employer, Judge Trimble, speaking for the court, made the following pertinent observations:

"It must be remembered that the question in the case at bar does not involve a bailment in which the bailee is the agent or servant of the bailor, nor is there any privity of contract between them. Unless, indeed, it can be said that the bailor, merely by lending the horse, makes the bailee his agent to care for the horse and thereby creates such a relation as will make the bailor responsible for the acts of the bailee. Now, it cannot be said that if the bailee had, after borrowing the animal for his own purpose, negligently ridden against another and injured him, the injured person could have any right of recovery against the bailor. If it be said that the bailor, by lending the horse, makes the bailee an agent for the care thereof and is thereby impliedly responsible for the latter's conduct in reference thereto, and also makes it possible for the injury to occur, the answer is that the bailee is not the bailor's agent in caring for the horse else the bailor would be responsible for a negligent injury committed by the bailee in using the horse, and this has never been held to be so. If the bailee failed to exercise the proper care, the bailor would

have a right of action against him; and he would also
have a right of action against a third party for negli-
gently injuring him. And when the negligence of the
two concurs he can sue both jointly or sue either one
as he chooses. And if lending the horse can be said
to render it possible for the injury to occur, the act
of lending was not such as to render plaintiff blame-
worthy in any degree. So that we have a case where
a plaintiff, without fault or negligence of his own, is
suing for a loss occasioned by the concurrent negli-
gence of two others. In such case can one of the per-
sons in fault set up in defense the fault of the other,
as against the owner who is wholly without fault? We
think not, and, while at first blush, the rule that the
contributory negligence of a bailee cannot be imputed
to a bailor when suing a third person for injuries to
property, may seem unjust; yet, *when the rule is con-
fined to those bailments which do not involve any priv-
ity of contract or agency between the bailor and
bailee,* it will not appear to be so harsh and unreason-
able as might be supposed."

That decision contains one of the best reviews of
the cases upon this subject to be found in the books.
The following decisions are also in harmony with and
support this view of the law: *Alabama Great South-
ern R. Co. v. Clarke,* 145 Ala. 459, 39 South. 816; *Cur-
rie v. Consolidated R. Co.,* 81 Conn. 383, 71 Atl. 356;
*Henderson v. Chicago Rys. Co.,* 170 Ill. App. 616;
*Goldsmith v. Chicago, Milwaukee & St. Paul R. Co.,*
176 Ill. App. 336.

Our own decisions are quite in harmony with this
view of the law, though they deal only with the ques-
tion of the contributory negligence of the drivers of
vehicles resulting in injuries to passengers therein,
both for hire and as an accommodation. See, *Allen v.
Walla Walla Valley R. Co.,* 96 Wash. 397, 165 Pac. 99,
and our previous decisions therein cited. All of the
decisions above noticed were rendered since the year

1897. In the late work of Van Zile, Bailments, § 128, that learned author states the law to be as above indicated.

The only decisions called to our attention which may be considered as lending support to the contrary view, are the following: *Puterbaugh v. Reasor,* 9 Ohio St. 484, decided in 1859; *Forks Township v. King,* 84 Pa. St. 230, decided in 1876, which decision, in so far as it may be regarded as authority upon this question is, in effect, overruled by the later decision of that court in *Gibson v. Bessemer & L. E. R. Co., supra; Welty v. Indianapolis & V. R. Co.,* 105 Ind. 55, 4 N. E. 410, decided in 1886, a critical reading of which case we think will show that it is, in at least some measure, distinguishable from the one before us; and *Illinois Cent. R. Co. v. Sims,* 77 Miss. 325, 27 South. 527, 49 L. R. A. 322, decided in the year 1900.

We are quite convinced that the decided weight of authority at the present time, and also the better reason, supports the view that the contributory negligence of Colley was not imputable to respondent, under the facts of this case as found by the jury.

The judgment is affirmed.

HOLCOMB, MOUNT, and FULLERTON, JJ., concur.

CHADWICK, C. J. (dissenting)—I do not agree with my esteemed associates. They have, as I believe, reasoned from a false premise. It is that Colley was a mere borrower or a gratuitous bailee, and was not engaged in his employer's (respondent's) business; and although there be some authority holding that the negligence of a gratuitous bailee may be imputed to the bailor, the later and better authority is to the contrary. I am willing to admit, for the purposes of this argument, that the holding of the court is sound and that the conclusion reached by the majority is sus-

tained by later authority (3 R. C. L., p. 147), although the rule is otherwise laid down in 29 Cyc. 546, and the annotator of the L. R. A. Reports says of *Sea Insurance Co. v. Vicksburg, S. & P. R. Co.,* cited in 17 L. R. A. (N. S.) 925, that "the only case found supporting the conclusion reached . . . is *New York, L. E. & W. R. Co. v. New Jersey Electric R. Co.,* 60 N. J. L. 338, 38 Atl. 828, 43 L. R. A. 849.

In the later annotation of *Gibson v. Bessemer & L. E. R. Co.,* 27 L. R. A. (N. S.) 689, it is said:

"Perhaps, *Gibson v. Bessemer & L. E. R. Co.,* which is in harmony with the *Sea Ins. Co.* case and *New York, L. E. & W. R. Co. v. New Jersey Electric R. Co.,* . . . may be regarded as sufficient to turn the scale in favor of the other side of the proposition."

But the law relied on does not reach or control the undisputed facts in this case, nor do any of the cases cited deny the principle for which I shall contend. It is, where property is not merely loaned to the user, but is turned over to him under a contract of use and as a part consideration for services rendered, the owner may not recover if the party to whom he has given the use of his property has been guilty of contributory negligence. It must be borne in mind that Colley did not hire the machine, nor was he using it as a mere gratuity. He had the use of it as part payment of a debt due from the owner, and as to third persons he was in legal effect and to all intents and purposes the owner of the machine. The machine had been bought by respondent and Colley, and was owned jointly by them for a time. Respondent, after two or three months, bought Colley's interest. Respondent testifies that Colley, who had worked for him for about three years, continued in his employment after the purchase of the machine under an arrangement whereby Colley was to get "so much a month and had

the use of the car," and that this arrangement had been in effect from November, 1916, up until the time of the accident. He further testifies that, from the time of the purchase of his interest, Colley, "was to have the use of the car and so much per month;" and,

"Q. When you bought back the half interest, it was the understanding that he at all times should have the use of the car in addition to his wages, and whenever he wanted to go anywhere he could take the car? A. Yes, sir. Q. In other words, the car was furnished you as part payment for your employment there? A. Yes, sir. Q. And you had been using the car that way for several months before the accident? A. Yes, sir, I had."

It is unnecessary to review the authorities cited by the majority. A brief reference to the case of *Spelman v. Delano,* 177 Mo. App. 28, 42, 163 S. W. 300, so strongly relied on by the writer of the opinion, will sufficiently illustrate my thought. The proper distinction is noted.

"The weight of authority seems to be clearly in favor of the rule that in a case where the circumstances show that the relation between the owner of the property and the one in possession of it at the time of its destruction is simply that of bailor and bailee, and does not involve any element of partnership, principal and agent, or master and servant, existing between them, then the contributory negligence of the bailee is not imputable to the bailor, in an action by the bailor against a third party for negligently destroying the bailor's property."

In *Sea Insurance Co. v. Vicksburg, S. & P. R. Co.,* 159 Fed. 676, 17 L. R. A. (N. S.) 925, the court qualifies the rule:

"When one has been injured by the wrongful act of another, to which he has in no way contributed, he should be entitled to compensation from the wrongdoer, unless the negligence of some one towards whom

he stands in the relation of principal or master has materially contributed to the injury."

The case of *Spelman v. Delano* was one of gratuitous bailment. The party in whose hand the property was at the time of the injury was a mere borrower.

"Plaintiff was under no obligation to transport Cook to and from his place of labor. His lending the horse to Cook was no part of the contract between them."

The case is distinguished from a case such as we have at bar upon that ground. Here the use of the automobile was a part of the contract of employment, and when respondent gave Colley the use of his machine in payment of his wages instead of money, he vouched for and became a guarantor of his competency to handle the machine and answerable for his due care in driving it, just as much as if he had employed him to drive the machine as a stage or as a delivery wagon. If Colley had negligently injured a third party, a court or jury would have surely held respondent to answer in damages upon the theory of agency or master and servant. He would not, in such case, be heard to repudiate his contract; then why in this? The falsity of the premise of the majority is, therefore, disclosed in the first line of the quotation from the *Spelman* case.

"It must be remembered that the question in the case at bar does not involve a bailment in which the bailee is the agent or servant of the bailor, nor is there any privity of contract between them."

If there be not privity of contract between the respondent and Colley, I would be at a loss to contrive a state of facts out of which such relation might arise. Had the quotation begun in the preceding paragraph,

the majority would have sounded the bottom upon which this case should be made to rest.

"Of course if, by reason of the circumstances of the bailment, there is a privity of contract between the bailor and bailee, so that the bailee can be regarded as the agent of the bailor, then the negligence of the former should be imputed to the latter, the same as when the relation of master and servant exists between them."

Now in the case at bar, it will not be disputed that the relation of master and servant existed at the time the contract was entered into and that the right to use the automobile as part remuneration for services rested in that relation. So, if the parties were master and servant at the time the contract was made, they must of necessity remain in that relation so long as the property was used under the terms and in the manner provided in the contract. That is to say, if they are master and servant as between themselves, they must, under all authority, remain master and servant as to third parties.

The harshness of the rule asserted by the majority, even in cases where it might be held to apply, is apologized for by the writer of the opinion in the *Spelman* case:

"While at first blush, the rule that the contributory negligence of a bailee cannot be imputed to a bailor when suing a third person for injuries to property, may seem unjust; yet, *when the rule is confined to those bailments which do not involve any privity of contract or agency between the bailor and bailee,* it would not appear to be so harsh and unreasonable as might be supposed."

So much for the law of the case as it arises out of the contract made by the parties and under which the machine was used at the time of the accident.

As I read the record, the facts will not sustain the holding of the majority or the verdict of the jury that Colley was not engaged in the prosecution of respondent's business, or that he was not his agent or his servant, and that he was using the car merely for his own pleasure and was, therefore, a gratuitous bailee.

Colley, having the use of the machine as against any right to interfere on the part of the respondent, drove out on a Sunday afternoon in company with a young lady whom he intended to take to her home. While traveling over the country, it occurred to him that a shipment of liquor which, as the law then was, must be obtained on a permit and then only at stated intervals, was about due. The liquor had been ordered by the respondent and was shipped in his name. Colley went out of his way, out of the path of pleasure, to go to the station. He had on other occasions gone to the same place to receive like shipments for respondent. He inquired of the agent whether a package had been received for respondent. Being notified that the package was at the depot, he receipted for it in respondent's name and undertook to carry it home. There was no express direction on the part of respondent to Colley to bring this particular shipment, but it was Colley's habit and his custom to go to the depot without specific direction and receive such shipments for respondent from time to time. Respondent himself testifies:

"Q. He had on other occasions stopped at the station and got packages of this character for you? So, it was understood that there was no objection on your part to his getting it out and bringing it home? A. No, sir; I didn't object. Q. It was perfectly agreeable with you that he stop and bring the package home, if he happened to be there? A. It was all right. Q. In fact, it would save you the trip, if it was there, and

he could bring it out for you? Is that the idea? A. Not necessarily the trip; no, sir. Q. What distance is it from your place to the station? A. About two miles. Q. He had to go for it if you didn't bring it out? Somebody has to get it? A. Yes, sir. Q. And after you had found out on this particular day he had received this package for you and signed for it in your name you made no objection at all? A. No, sir. Q. It was perfectly satisfactory to you? A. Yes, sir. Q. When you found out that he received your package and was taking it out, you made no objection, and it was perfectly satisfactory to you that he might bring it out? A. Yes. Q. While you had not instructed Mr. Colley to get any packages for you, he had from time to time brought packages out for you, and it was agreeable to you that he should do that? A. I had no objection to anybody bringing them out to me. Q. And he had done it before? A. He had probably, but I don't remember it. Q. And it was perfectly agreeable that he should get this particular package and bring it out? A. I had no objection. Q. You made no objection after you found out that he had the package on that particular day? That was perfectly satisfactory to you that he should bring it out? A. I didn't make any objection."

This testimony clearly discloses that, aside from all other questions in the case, Colley was engaged in his master's business; and whether under an implied or express authority, his act was ratified so as to put it beyond the power of the respondent to disaffirm his negligence and recover in this case. The liquor was received by Colley, who signed the name of respondent, and respondent says that his act was "perfectly satisfactory" to him. The testimony of the respondent is corroborated by that of Colley, the driver of the machine.

For these reasons, I believe that the judgment should be reversed and the cause dismissed.