No. 3686

**Second Circuit**

---

U-DRIVE-IT-CAR CO., INC., v. THE
TEXAS PIPE LINE CO., INC.

---

(July 5, 1930.   Opinion and Decree.)
(October 2, 1930.   Rehearing Refused.)

---

Reynolds,   Hamiter   &   Henderick,   of
Shreveport, attorneys for plaintiff, appellant.

Pugh Grimmet & Boatner and F. Simon,
of Shreveport, attorneys for defendant, appellee.

DREW, J.   Plaintiff sued the Texas Pipe
Line Company, Inc., for $226.36 for damages to plaintiff's car.   Plaintiff leased its
car to W. H. Powell for his personal use
at a stipulated price per hour, and while
Powell was driving said car, returning
from a dance he had attended, and at an
early hour of the morning, it collided with
a truck owned by the defendant, which
was parked on a paved street in the city
of Shreveport, in violation of the traffic
ordinance of the city of Shreveport and
caused plaintiff damages to its car.

It is alleged that no lights were burning
on said truck.

Defendant admits that the truck was owned by it and that it was parked as alleged by plaintiff and that no lights were burning on said truck. It denies all other allegations of plaintiff's petition, and alleges that the truck was parked by one T. A. Porter, one of its employees, but he was not acting in the scope of his employment at the time he parked the said truck; that he parked the said truck on the street for his own convenience and after working hours. Further alleges that the accident occurred entirely by reason of the gross carelessness, recklessness, inattention, and negligence of said W. H. Powell, and that neither defendant nor T. A. Porter was in any way responsible therefor. Further alleges that the acts of negligence of Powell constitute the sole, immediate, direct, and proximate cause of the accident, and in the alternative, pleaded contributory negligence on part of said Powell as a bar to recovery.

On these issues, the case was tried, and the lower court rendered judgment in favor of defendant, rejecting the demands of plaintiff. From this judgment, the plaintiff has appealed.

The first question raised by the defendant is the most serious one in the case; that is, was the negligence of the defendant employee, Porter, in parking the truck in violation of a city ordinance, at the time it was parked, such an act of the employee as will make the defendant liable in damages?

It is admitted that Porter was employed as driver of the truck by the defendant and that the truck was the property of the defendant. Porter testified that his hours of work were from 7 in the morning until 5 in the afternoon and that he parked the car in front of his house about 10 o'clock, we presume that night; he does not state what he had been doing with the truck between the hours of 5 and 10, nor does he state that he ceased work at 5 that day. The record is void of any testimony in regard to what his work consisted of, other than driving the truck. He testified that the defendant authorized him to keep the truck at his home at night for the reason that it was too far to go to get the truck in the morning, and that he had kept the truck at his home every night he had worked for the defendant, with the exception of the times he was not at home, and that he had parked it in the street, as he did this night, on several other nights. That is the full extent of the testimony regarding the employment of Porter, the driver, and in regard to his duties. It is not shown that his duties did not require him to keep the truck in his custody and, to the contrary, his testimony indicates that it was necessary and for the interest of defendant that he did keep the truck in his possession and custody at night. It goes without saying that if Porter's duties required him to maintain custody and control of the truck at night, he had to store or park it somewhere, and he should have parked it off the street.

When the plaintiff proved that the truck was the property of defendant and that Porter, the driver, and one who parked it in the street, was an employee of defendant, it had made out a prima facie case, and it was incumbent upon the defendant to show that Porter was not acting within the scope of his employment at the time and when he parked the truck on the street in violation of a city ordinance. The defendant has signally failed to offer any proof on this point, and the only testimony in regard thereto is that given by Porter himself, which indicates that he was acting in the scope of his employment and in furtherance of the defendant's business, and we are forced to hold that the defendant is

liable for the acts of negligence of the employee, Porter.

The testimony shows that the driver of plaintiff's car was returning from a dance some time between 1 and 3 o'clock in the morning and ran into the truck, damaging the car of plaintiff. It is contended by defendant that the driver of plaintiff's car should have seen the truck and had sufficient room to pass same, if he had been keeping the proper lookout; that the truck could be seen nearly two hundred feet, without lights on the car and by the street lights alone; and that the negligence and carelessness of the said driver were the proximate causes of the accident and at least contributed to the accident. Be that as it may, it is unnecessary in this case to pass upon the rights as between the defendant and the driver of plaintiff's car, for the negligence of the driver of plaintiff's car cannot be imputed to the plaintiff. It suffices to say that defendant was negligent in parking the truck on a paved street in the city of Shreveport, without lights, in violation of a city ordinance, and whether that negligence alone caused the accident or only contributed towards the accident is immaterial. If defendant and the driver of plaintiff's car both contributed to the accident or the accident was caused by their joint negligence, then both would be liable to plaintiff. It is sufficient for this case to say that the acts of negligence of the defendant contributed to the accident, and it is liable therefor.

Defendant contends that the contributory negligence of Powell, the driver of plaintiff's car, was in any event imputable to plaintiff, preventing his recovery. This contention is rested upon the theory that because of the relationship between Powell and plaintiff with reference to the automobile, though it be only that of bailor and bailee, plaintiff cannot recover for the injury to the automobile because Powell's contributory negligence would prevent his recovery for injury to the automobile. There was a time when the decisions of the courts seemed to support this view of the law, but in recent years the weight of authority, we think, is decidedly to the contrary.

It is admitted that Powell was at the time of the injury to the automobile driving it for his own pleasure and not in the course of any employment with plaintiff. It is therefore plain that the relation then existing between him and plaintiff with reference to the automobile was merely that of bailor and bailee. 6 Corpus Juris, 1101; 3 R. C. L. 72.

"The negligence of a bailee using another's automobile for his own pleasure is not imputable to the owner, so as to prevent the latter's holding another liable for negligently injuring the car." N. C. Lloyd v. Northern Pac. Ry. Co., 107 Wash. 57, 181 P. 29, 31, 6 A. L. R. 307.

The above-cited decision reviews the jurisprudence of many jurisdictions and the reason therein is sound:

"In Gibson v. Bessemer & L. E. R. Co., 226 Pa. 198, 75 A. 194, 27 L. R. A. (N. S.) 689, 18 Ann. Cas. 535, there was involved the hiring of a horse from a livery stable keeper and the killing of the horse by the railroad company while being driven by the bailee. The railroad company resisted the claim of damage made by the owner for the killing of the horse upon the ground of the bailee's contributory negligence in driving upon the track. Holding that the negligence of the bailee was not attributable to the bailor, the owner of the horse, preventing his recovery, Justice Potter, speaking for the court, observed:
"'And in Edwards on Bailments (3d Ed. 1893) sec. 392, it is said: "The hirer of wagons, or carriages and horses, receiving them into his custody to be used by him at his pleasure, becomes a bailee, and is in no sense a servant of the owner. He is responsible to the owner for the reason-

able care of them, and to third persons for any negligence of his servants in the use of them. He is liable to third persons to the same extent as if he were the actual owner of the vehicles and teams used by him." And again, in 1 Thompson on Negligence (1901) sec. 512, it is said: "Unless the principles upon which the courts have at last settled have been grossly misconceived, the negligence of a bailee or his servants is not imputable to his bailor." As far back as the case of Bard v. Yohn, 26 Pa. 482, Justice Knox stated the law as follows (page 489): "If one lets or hires to another a horse to be used exclusively for the purposes of the latter, the owner of the horse is in no wise responsible for the negligent manner in which the horse may be used."

" 'There is a difference where the owner sends a driver to manage and control the team and vehicle; for in so doing the owner retains the control, and may well be held accountable for the action of the driver, his servant and agent. But in the present case no driver was furnished, and the hirer assumed the care and control of the horse. There was no relation of master and servant or of principal and agent between the hirer and the liveryman, and the latter cannot be held responsible for the negligence of the former. Each must recover in his own right, if at all, and each must stand upon his own ground. Had Lantz, the hirer, brought suit and shown negligence by the defendant, and no negligence upon his own part, he could have recovered for damage to himself, but not for damage to the horse or vehicle. His right of action depended in no way upon that of the present plaintiff, nor does the right of recovery in the present action depend upon the right of the bailee to recover.' "

The above case is on all fours with the case here and the reasoning is applicable.

"In New York, L. E. & W. R. Co. v. New Jersey Elec. R. Co., 60 N. J. Law, 338, 38 A. 828, 43 L. R. A. 849, there was involved a bailment arising out of the hiring of cars which were injured in a collision resulting from the concurring negligence of the bailee and the defendant company. It was sought by the defendant company to escape liability to the bailor, the owner of the cars, upon the ground of the bailee's contributory negligence being in law imputed to the bailor. In concluding an exhaustive and well-considered opinion, Justice Lippincott, speaking for the New Jersey Court of Appeals, said:

" 'I cannot perceive that whether, in respect to this action, the duty of the defendant and the bailee were joint or separate, can make any difference. If the same duty of care was due and owing to the plaintiff, then a common neglect of that duty would render them both liable as joint tort-feasors. If the duty to plaintiff was a separate one which was neglected to be performed by each of them, although the duties were diverse and disconnected, and the negligence of each was without concert, if such neglects concurred and united in causing the injury, the tort still is equally joint, and the tort-feasors are subject to a like liability. Matthews v. Delaware, L. & W. R. Co., 27 Vroom (56 N. J. Law) 34, 27 A. 919, 22 L. R. A. 261. The bailee was bound to use reasonable care and diligence in the preservation of the property from injury. The defendant, in the operation of the electric car, was bound to exercise reasonable care in avoiding injury to the property of which the plaintiff was the owner. It would seem that the intervention of the negligence of the bailee could not shield the defendant from injury caused by its own negligence. Both might have been selected as joint tort-feasors, or the action could be maintained against either. The conclusion reached is that the plaintiff had the right to sue either or both of these companies for the injuries arising from their negligence to the locomotive and cars of the plaintiff, and it is not a defense to the action that the accident was contributed to by the negligence of the other. Each is liable upon its own negligence, and the negligence of the bailee is not imputable to the plaintiff as a shield to the defendant against recovery.'

"In Sea Ins. Co. v. Vicksburg, S. & P. R. Co., 159 F. 676, 86 C. C. A. 544, 17 L. R. A. (N. S.) 925, the Federal Circuit Court of Appeals for the Fifth Circuit had under consideration a bailment consisting of the leaving of cotton with a compress company to be bailed. In holding that the loss of the cotton by fire resulting from the negligence of the railway company contributed to by the negligence of the bailee would not prevent recovery by the insur-

ance company as assignee of the bailor. Judge Shelby, speaking for the court, said in part:

" 'A plaintiff cannot recover damages for an injury to which he has directly contributed by his own negligence. If the plaintiff's own fault, whether of commission or omission, has materially contributed to the injury, the plaintiff is without remedy against one also in the wrong. The converse of this doctrine ought to follow as a necessary corollary—that when one has been injured by the wrongful act of another, to which he has in no way contributed, he should be entitled to compensation from the wrongdoer, unless the negligence of some one towards whom he stands in the relation of principal or master has materially contributed to the injury. The bailor, we hold, is not the principal or master of the bailee.'

"In Spelman v. Delano, 177 Mo. App. 28, 163 S. W. 300, the court had under consideration a bailment in substance the same as that which is here involved; that is, it was the case of a farm hand having the use for his own pleasure of a horse belonging to his employer. While he was riding the horse it was killed by the railway company of which the defendant was receiver; the death of the horse being the result of the negligence of the railway servants and the contributory negligence of the farm hand, the bailee. Holding that his contributory negligence was not imputable to the bailor, his employer, Judge Trimble, speaking for the court, made the following pertinent observations:

" 'It must be remembered that the question in the case at bar does not involve a bailment in which the bailee is the agent or servant of the bailor, nor is there any privity of contract between them, unless, indeed, it can be said that the bailor, merely by lending the horse, makes the bailee his agent to care for the horse, and thereby creates such a relation as will make the bailor responsible for the acts of the bailee. Now, it cannot be said that, if the bailee had, after borrowing the animal for his own purpose, negligently ridden against another and injured him, the injured person could have any right of recovery against the bailor. If it be said that the bailor, by lending the horse, makes the

bailee an agent for the care thereof, and is thereby impliedly responsible for the latter's conduct in reference thereto, and also makes it possible for the injury to occur, the answer is that the bailee is not the bailor's agent in caring for the horse, else the bailor would be responsible for a negligent injury committed by the bailee in using the horse, and this has never been held to be so. If the bailee failed to exercise the proper care, the bailor would have a right of action against him; and he would also have a right of action against a third party for negligently injuring him. And, when the negligence of the two concurs, he can sue both jointly or sue either one as he chooses. And if lending the horse can be said to render it possible for the injury to occur, the act of lending was not such as to render plaintiff blameworthy in any degree. So that we have a case where a plaintiff, without fault or negligence of his own, is suing for a loss occasioned by the concurrent negligence of two others. In such case can one of the persons in fault set up in defense the fault of the other, as against the owner who is wholly without fault? We think not, and, while at first blush the rule that the contributory negligence of a bailee cannot be imputed to a bailor when suing a third person for injuries to property may seem unjust, yet, when the rule is confined to those bailments which do not involve any privity of contract or agency between the bailor and bailee, it will not appear to be so harsh and unreasonable as might be supposed.' "

This decision contains a review of the decisions on this subject and is a leading case. The following decisions also support this view: Alabama Great Southern R. Co. v. Clarke, 145 Ala. 459, 39 So. 816; Currie v. Consolidated R. Co., 81 Conn. 383, 71 A. 356; Henderson v. Chicago Rys. Co., 170 Ill. App. 616; Goldsmith v. Chicago, M. & St. P. R. Co., 176 Ill. App. 336.

The decisions of our own state are not in conflict with this view of the law.

We are convinced that the decided weight of authority at the present time, and also

the better reason, support the view that the contributory negligence of Powell was not imputable to plaintiff under the facts of the case.

The act of negligence of defendant's servant or employee in parking the truck on a paved street in the city of Shreveport in violation of a city ordinance was negligence per se and contributed to the accident, and the contributory negligence of Powell cannot be imputed to plaintiff; therefore plaintiff should have judgment for the damage to his automobile and the judgment of the lower court will have to be reversed.

The only remaining question is the amount of damage caused to plaintiff. It sued for $111.36, for costs of actual repairs made on car, and said amount was proved and should be allowed. It prays for loss of service of car for eight days, at $5 per day. However, the testimony shows that the car was out of commission only five days and the profit on the car was $1 per day; therefore, it is entitled to judgment for $5 on that item. It prays for $75 for depreciation of value of the car, caused by the collision, and proved that the car after being repaired was at least of a less value by $75 than before the collision and that to have put the car in the same condition as it was prior to the accident would have cost at least $100 more than was spent on repairs. We think this item is proved.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed, and that there be judgment in favor of plaintiff, U-Drive-It-Car Company, Inc., and against the defendant, the Texas Pipe Line Company, Inc., in the sum of $191.36, with interest at the rate of 5 per cent per annum from judicial demand until paid; and for all costs of both courts.