243 P.2d 1018

**PAUL v. BENAVIDEZ et al.**

No. 5463.

Supreme Court of New Mexico.

May 3, 1952.

Hodges & Hodges, Silver City, H. Vearle Payne, Lordsburg, for appellants.

Garland & Sanders, Bert E. Newland, Las Cruces, for appellee.

COMPTON, Justice.

Appellee brought this action against Rita Benavidez, Joe Mecenez, W. E. Hanna, and Jeff Hooker, d/b/a Jeff Hooker Motor Co., for damages for the wrongful death of his minor son, Hi Driskill Paul, resulting from the negligent operation of a motor vehicle, the property of Jeff Hooker.

Appellee alleges that he is administrator of the estate of the deceased son; that Jeff Hooker is an automobile dealer, d/b/a Jeff Hooker Motor Co., and that W. E. Hanna is his agent. He further alleges that Hanna, as agent of Hooker, delivered the vehicle in question, a pickup truck, to Joe Mecenez for the purpose of driving it to the home of his brother-in-law, Billy Benavidez, husband of Rita Benavidez, for demonstration and sale, and that Mecenez, while so authorized by Hanna, permitted Rita Benavidez to drive the vehicle. It is alleged that Rita Benavidez was an incompetent driver and that Joe Mecenez knew or, by the exercise of ordinary care and prudence, should have known that she was an incompetent driver. It is further alleged that the negligent operation of the vehicle by the said Rita Benavidez was the proximate cause of the death of the deceased. In response to a motion to make more definite and certain, it appears that appellee was appointed administrator by the district court.

Appellants, Hooker and Hanna, generally deny liability and assert legal defenses. They admit that the deceased was accidentally killed by the vehicle belonging to Hooker, while being driven by Rita Benavidez. They also admit that Hanna was an agent of Hooker and that Mecenez took the vehicle in question to the home of Billy Benavidez for the purpose of demonstration and sale but deny other allegations. They specifically deny that Billy Benavidez or Joe Mecenez were their agents. They interpose the further plea which denies that appellee is the duly appointed administrator of the estate of the deceased, and which denies his right to bring this suit as such administrator.

When the case came on for trial, the jury returned a verdict in favor of appellee for $18,000. Judgment was entered on the verdict from which Hooker and Hanna appeal.

The sufficiency of the evidence, the jurisdiction of the district court, the admission of certain evidence, and the refusal of the court to give certain requested instructions, are questions for review.

Hooker was an automobile dealer, operating under the name of Hooker Motor Co., and Hanna was his agent and sales

manager. Hanna, who was endeavoring to sell the vehicle involved, a pickup truck to a propsective purchaser unable to speak English, drove it to the Mecenez home and requested Mecenez to accompany him to the home of the propsect to act as an interpreter. On the way, it was learned that the prospect was not interested, at which time Mecenez informed Hanna that his brother-in-law, Billy Benavidez, was a possible prospect. Hanna then requested Mecenez to take the truck to the home of Billy Benavidez for the purpose of interesting him in purchasing it. Mecenez did so and arrived at the Benavidez home around 11:30 in the morning and was informed that Billy Benavidez was not at home and would not return until about 4:30 that afternoon. At the time, Rita Benavidez and a neighbor, Mary Lancaster, were at the Benavidez home. Mecenez announced to Rita Benavidez that he had brought the truck over for demonstration and wanted to sell it to Billy Benavidez. He asked her if she wanted to look at it. She was told that it was parked in front of her house, they immediately went out to inspect it and Rita Benavidez got into the driver's seat and drove away.

She traveled the highway some distance and then turned off onto private property, a distance of 79 feet, and into a yard where Hi Driskill Paul and another child, a little girl, were playing. The car was headed in the direction of the children and in order to reach them, it had to travel up a steep incline. As it ascended the incline the motor was racing, though the car was traveling slowly. In their effort to escape, the children were bumped a time or two, knocking them forward but not down. The little girl jumped to one side and the deceased attempted to escape to the other, but Rita Benavidez swerved the truck into his path and ran over him, causing his death.

At the close of the case appellant moved for a directed verdict on the ground that the relation of master and servant had not been established, the denial of which is assigned as error.

■ We know of no rule of law or equity that will permit a servant to impose an agent on the master without his consent, for whose negligence the master would be liable.

American Law Institute, Restatement, Agency, Sec. 81, says:

"Unless otherwise agreed, a servant is not authorized to permit or employ another to perform acts of service which he is employed to perform." Section 241, op. cit., states:

"A master who has entrusted a servant with an instrumentality is subject to liability for harm caused by its negligent management by one to whom the servant entrusts its custody to serve the purposes of the master, *if the serv-*

*ant should realize that there is an un-*
*due risk that such person will harm*
*others by its management.*" (Emphasis
ours.)

Other authorities holding that the master
is not liable for the negligence of one
selected by the servant without authority
from the master, are cited in support of the
text, at 57 C.J.S., Master and Servant, §
564, (b), which reads:

"Where there is neither express nor
implied authority given a servant to
employ another to perform or to assist
him in the performance of his work,
or a subsequent ratification by his em-
ployer of such employment, the rela-
tion of master and servant between the
employer and one so employed by his
servant does not exist and he is not
liable for the negligent acts of the lat-
ter under the doctrine of respondeat
superior."

We find from an examination of
the record that there is neither evidence
that Hanna had authority to permit or em-
ploy assistance in the performance of his
duties, nor evidence that Hanna had rea-
son to believe that harm would result in
turning custody of the truck to Mecenez.
Consequently, we conclude the case to be
one of bailment. At 60 C.J.S., Motor Vehi-
cles, § 436e, p. 1091, the author of the text
says:

"The owner is not as a general rule
liable for the wrongful or negligent
operation of the motor vehicle by a
prospective purchaser unless he or his
agent is present in the car."

See, Mosby v. Kimball, 345 Ill. 420, 178
N.E. 66; Kantola v. Lovell Auto Co., 157
Or. 534, 72 P.2d 61; Gulf Refining Co. v.
Ray Motor Co., 129 Me. 499, 152 A. 226;
Wayne's Adm'x v. Woods, 275 Ky. 477, 121
S.W.2d 957; Foley v. John H. Bates, Inc.,
295 Mass. 557, 4 N.E.2d 349.

The facts in the case of Broadway
Motors, Inc. v. Bass, 252 Ky. 628, 67 S.W.2d
955, 957, are enough like those in the case
at bar as to make it a supporting authority.
The court said:

"Then applying the rule enunciated
in the cases, supra, to the facts of the
instant case. Anderson had no right
or authority to permit Freeman to take
the car from the lot and possessions of
appellant for the purpose of demonstra-
tion to a prospective purchaser with-
out the consent of appellant and in
violation of the rules and instructions
of appellant, and, when he did so, he
was acting for himself and not within
the scope of his authority as appel-
lant's agent.

"Anderson being employed by appel-
lant to sell cars merely raises the pre-
sumption that he was acting in the

scope of his authority when attempting to sell a car, which presumption is but an inference drawn from the circumstance of his employment, and, when it was shown by appellant that Anderson had no authority to let Freeman have the car to exhibit to Thompson, the presumption was overcome. *Mullen & Haynes Co. v. Crisp,* 207 Ky. 31, 268 S.W. 576."

In *Hamp v. Universal Auto Co.,* 173 Wash. 585, 24 P.2d 77, 78, the Company was in the business of selling new and secondhand automobiles. It authorized a husband and wife, Mr. and Mrs. Allen, to take out a Lincoln automobile owned by it for purposes of testing same. The Allens took along one Verle R. Miller for the trip on which the car was being tested and at the time of the injuries complained of in the action, Miller, at the request of the husband, was actually driving the car. The language of the court is of such pertinent application here that it is quoted somewhat at length:

"The question presented is whether the Universal Auto Company is responsible for the negligent acts which, it is alleged, caused the accident. The answer to this question depends upon whether Mr. Allen was the agent or employee of the auto company. If the relation between the parties was that of bailor and bailee, the owner of the automobile would not be responsible for the negligent acts of those who had the possession and use of it when the accident occurred. On the other hand, if Mr. Allen was the agent or employee of the auto company, acting within the scope of his agency or employment, his negligent acts would be imputed to the owner of the automobile. *Lloyd v. Northern Pac. R. Co.,* 107 Wash. 57, 181 P. 29, 6 A.L.R. 307; *Mitchell v. Churches,* 119 Wash. 547, 206 P. 6, 36 A.L.R. 1132.

"The facts, as recited in the complaint, other than the statement quoted to the effect that Mr. Allen was the agent and employee of the auto company, show nothing more than the relation of bailor and bailee. The allegation that Mr. Allen was the agent and employee for the purpose of demonstrating the automobile was a mere conclusion of the pleader. A demurrer admits all facts which are well pleaded, and all intendments and inferences that may be fairly and reasonably drawn therefrom, but it does not admit recitals of conclusions either of fact or law. 21 R.C.L., p. 506; *Barnes v. Jones,* 139 Miss. 675, 103 So. 773, 43 A.L.R. 673; *MacEachern v. MacEachern,* 126 Wash. 32, 216 P. 881; *State v. Ishikawa,* 139 Wash. 484, 247 P. 730.

"The recital in the complaint that Mr. Allen was the agent and employee of the auto company was a mere conclusion, not the allegation of a fact or an inference that could reasonably be drawn from the facts pleaded, and was therefore not admitted by the demurrer. The fact that the owner of the automobile delivered it to Mr. Allen as a prospective purchaser does not justify the imputation to the owner of Allen's negligence while driving it for demonstration purposes. Blashfield, Cyclopedia of Automobile Law, vol. 2, p. 1323."

In Bradley v. S. L. Savidge, Inc., 13 Wash.2d 28, 123 P.2d 780, 784, liability was sought to be imposed on the owner of a car through negligence of the driver, a friend of the car salesman, who had taken him along to bring back a car being repossessed by the defendant. The court denied liability and, among other things, said:

"A case very similar on its facts to this is White v. Consumers Finance Service, Inc., 339 Pa. 417, 15 A.2d 142, 144. Defendant finance company instructed one of its employees to repossess an automobile. Unlike the case at bar, no orders were given concerning assistance. On the way to acquire the car, the employee secured the aid of one Huddy. After repossessing it, the employee had Huddy drive the repossessed car while he drove his own. On the journey back, Huddy negligently collided with plaintiff. In refusing a recovery against the company on the theory that Huddy became its servant, the court stated:

" 'The liability of the original defendant for the acts of Huddy depends upon the question whether Smith, its employee, had express or implied authority to obtain Huddy's assistance in the repossession of the car. The general rule applicable to situations of this type is stated in many of our decisions. We said in Corbin v. George, 308 Pa. 201, at page 204, 162 A. 459, at page 460, speaking by the present Chief Justice: "The relation of master and servant cannot be imposed upon a person without his consent, express or implied. The exception to this rule is that a servant may engage an assistant in case of an emergency, where he is unable to perform the work alone." [Citing cases.]

" 'In the present case we have searched the record in vain for evidence that Smith was instructed to engage an assistant. Certainly his authority to do so cannot be implied from the nature of the service which he was directed to perform. The repossession of the car was not such a task as "to

require, as a necessary incident, the employment of outside help." ' "

\* \* \* \* \* \*

"We conclude, therefore, that 'It would be a most dangerous extension of the doctrine of respondeat superior to permit one merely authorized to use another's car to turn it over to whom he may elect, and thus impose a liability on the owner for the negligence of one whom he has never known nor authorized to operate a car for him:' Toranto v. Hattaway, supra [219 Ala. 520, 122 So. (816) 819]."

We are of the opinion that Hanna was unauthorized to impose Mecenez on appellant as his agent and, as the transaction was one of bailment, Hanna is also absolved from liability. It follows that the motion for a directed verdict should have been sustained.

The case is to be distinguished from those cases where the servant, without authority, delegates a particular duty to a stranger but is present and co-operating with the latter in the performance of such duties at the time of injury. In those cases the master is held liable on the ground that the negligence of a stranger is the negligence of a servant. Cain v. Bowlby, 10 Cir., 114 F.2d 519; Emison v. Wylam Ice Cream Co., 215 Ala. 504, 111 So. 216; Malco Theatres, Inc. v. McLain, 196 Ark. 188, 117 S.W.2d 45; Interurban Transp. Co., Inc. v. Reeves, 194 Ark. 321, 108 S.W.2d 594; Jones v. Lozier, 195 Iowa 365, 191 N.W. 103; Geiss v. Twin City Taxicab Co., 120 Minn. 368, 139 N.W. 611, 45 L.R.A.,N.S., 382; also, see Michigan Law Review, Vol. 3, p. 198, where earlier decisions are collected.

In announcing our conclusion, we do not commit ourselves to the proposition that in the case of an emergency, the servant, being unable to perform the duties required of him, would not have authority to permit or employ assistance in the performance of his duties. This authority arises under the doctrine of necessity but the question is not before us.

Other questions are presented by the appeal but the conclusion reached disposes of the case. The judgment will be reversed with directions to the trial court to set aside the verdict against Hooker and Hanna and it is so ordered.

LUJAN, C. J., and SADLER, McGHEE, and COORS, JJ., concur.