LOTTINGER, Judge.
This is a suit for damages resulting from an accident when a barge under tow owned by the defendant company, Buras Transportation Company, Inc., ran into and damaged an airplane belonging to petitioner, Hughes Tool Company. The Lower Court rendered judgment in favor of petitioner in the sum of Five Thousand Six Hundred ($5,600.00) Dollars. The defendant has taken a suspensive appeal.
The facts show that the accident in question occurred at approximately 8:45 A.M. on January 19, 1957. At the time of the accident, the tug Joella was towing five barges in an easterly direction through the City of Houma, Louisiana. The tug was approximately 61 feet in length, three of the barges measured 195 feet in length each, and two of the barges measured 175 feet in length each. Considering the distance between the tug and the first barge, and the length of the various vessels, the complete length of the tug and tow measured approximately 975 feet. Shortly be *221 fore the accident, and at a distance of approximately one-half mile west of the point of impact, the tug and tow passed through a pontoon type bridge referred to in the record as the East Pontoon Bridge. The captain of the vessel testified that his normal speed was between four and one-half to five miles per hour, however, in passing through the bridges, the speed was reduced to between one and one-half to two miles per hour. The captain further stated that between the East Pontoon Bridge and the site of the accident he had traveled at about one or one and one-half miles per hour. The scene of the accident was the Geist Seaplane Base situated on the west bank of. the Intracoastal Canal at Houma. There is an indenture or a slip made by Geist on the bank of the Intracoastal Canal, to which leads a ramp, and, in launching and retrieving seaplanes, the seaplane rests on a dolly which is pulled by a jeep.
There was a contract between Hughes Tool Company and the Geist Seaplane Base whereby the particular aircraft in question was maintained and serviced by the seaplane base. As part of the contract, it was the duty of Geist to store the aircraft when it was not in use by petitioner. For these services, the petitioner paid Geist a fixed monthly consideration, except for any main-tenances and repairs to the aircraft, which were charged additionally. The normal procedure was that whenever petitioner desired to use its aircraft, it would telephone Geist from its Houma Office and advise him to prepare the plane for flight. The pilot and any passengers would then proceed to the seaplane base, and normally the plane would be prepared for launching upon their arrival.
On the morning of the accident, the pilot of the aircraft, Mr. Kenneth Wilson, who was an employee of petitioner and who was the only man who flew this particular aircraft, called the seaplane base and advised them to prepare the aircraft for launching. Under its normal procedure, the employees of Geist placed the aircraft on a dolly and lowered it on the ramp into the water. The plane was not afloat, but was still resting on the dolly when the accident occurred. The captain of the defendant company testified that after passing through the East Pontoon Bridge, his barges began to swing to the left, or toward the western bank of the Intracoastal Canal. Although the tug was traveling on the right side of the canal, the barges, due to a twelve to fifteen mile per hour southeast wind blowing that morning, began dragging the left bank of the canal at a point about one-half the distance between the bridge and the seaplane base. There was nothing moored on either bank of the canal, except the aircraft which was situated within the slip of the Geist Seaplane Base with its tail protruding possibly some short distance into the canal. The captain of the tug testified that he first noticed the seaplane when he was just a little bit west of it, at which time the barges were dragging the west bank of the canal. The captain attempted to increase his speed to bring his barges under control, however,, he was unsuccessful and the barges struck the aircraft, causing the damages complained of. The captain of the tug testified that there were a total of four men in his crew, and that they were all on board the tug at the time of the accident. He further estimated that prior to the accident, the tail of the aircraft was protruding some eight to ten feet into the Intracoastal Canal. The pilot of petitioner, however, testified that after the accident the aircraft was situated within the slip of the seaplane base. He further testified that the plane could not have protruded into the canal because it would then have been in deep water which would have caused the plane to float away. It was the custom to launch the plane on the raft partly in the water until the pilot and passengers boarded same, at which time the dolly would be shoved further into the water so that the plane could float.
The Lower Court, after hearing all the evidence, held that the defendant’s negligence was the cause of the accident and *222 awarded damages as stated above. The Lower Court held that the petitioner was not guilty of contributory negligence which was specially pleaded by the defendant. The amount of damages is agreed to by both parties.
On this appeal, the defendant claims that the Lower Court erred in rendering its judgment based upon state law, whereas it claims that admiralty law should prevail, and that the federal doctrine of comparative negligence should be applied. He further complains that petitioner, as owner of the aircraft, is liable in rem under maritime law for the negligence and failure to act of the employees of the Geist Seaplane Base.
At the outset we might say that not one scintilla of evidence was produced by the defendant to show any active negligence on the part of either petitioner or the employees of Geist Seaplane Base. It is defendant’s position, first that the tail of the seaplane protruded into the Intracoastal Canal waterway and second, that the employees of Geist took no action to recover the seaplane when the tug and its tow approached. However, there is no evidence that these employees either knew of the approaching tug and tow, nor do we believe they could be held responsible for foreseeing that the tow would be dragging its left bank of the canal. We feel, therefore, that even if the federal doctrine of comparative negligence were to be applied, such would be no benefit to the defendant be■cause no negligence was proved against the employees of Geist.
Furthermore, relationship between Geist and petitioner was one of bailment, and the negligence of the bailee is not imputable to the bailor. U-Drive-It-Car Co., Inc. v. Texas Pipeline Co., Inc., 14 La.App. 524, 129 So. 565; Sewell v. Newton, et al., La.App., 152 So. 389; and Meyer v. Rein, La.App., 18 So.2d 69.
However, it appears that because of the adverse holding of the Lower Court, the defendant now attempts to classify the present proceeding as an action in rem under maritime law. The airplane is not a party to this suit, this is simply a personal action by petitioner who is the owner of the airplane. Any in rem action under maritime law should have been taken in Federal Court as, according to Benedict on Admiralty 6 Ed., Vol. 1, Sec. 11, at p. 21:
“The proceeding in rem is the peculiar characteristic of admiralty and, as will appear hereafter, the States may not confer upon their courts, in any case cognizable in admiralty, the power to proceed in rem, even to enforce a lien created by State law * *
To the same effect is Robinson on Admiralty, West Publishing Company, Sec. 47, at p. 359:
“The forum for a proceeding in rem in admiralty is necessarily a district court of the United States. It may not be a state court.”
We feel that the Lower Court was correct in holding that the relationship was one of bailment, for which the petitioner would not be responsible even if any negligence on the part of the employees of the bailee was proved. Although the defendant claims in its brief that the failure of the petitioner to place the employees of Geist on the witness stand to disprove any negligence on their part should be held against petitioner, we know of no law in support of this contention. Both under state law and federal law, it is incumbent upon the petitioner to prove the negligence of his adversary or, as regards contributory, or comparative, negligence the burden of proof is upon the party alleging same. As we stated before, there is no proof whatsoever adduced by defendant to show negligence on the part of Geist or his employees. Even if such negligence were shown, under the theory of bailment, the negligence of Geist or his employees would not be imputable to the petitioner. Prior to, and at the time of the accident, the airplane was under the exclusive control of Geist, and, certainly, *223 there was no negligence shown on the part of petitioner.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by defendant.
Judgment affirmed.