## Louisville Lozier Company, et al. v. Sallee.

(Decided December 17, 1915.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Number Three).

1.   Damages—Negligence—Automobiles—Negligent Operation.—Party whose purposes and undertakings are being served by an automobile at the time of an accident, is responsible to party injured by its negligent operation.

2.   Damages—Negligence—Automobiles—Negligent Operation—Person operating an automobile by permission, and in the presence of party whose purposes and undertakings are being served, is the servant of such party, for whose negligent acts said party is liable.

3.   Damages—Inadequate and Excessive—Automobiles.—Damages in the sum of $11,500 awarded to party run over by an automobile and seriously and permanently injured as described in the proof in this case, held not to be so excessive as to appear to have been given under the influence of passion or prejudice.

4.   Exceptions, Bill of.—Amendment or Correction.—Bill of exceptions cannot be amended after last day fixed in succeeding term for

filing same and after same has been approved and signed by the trial court.

BENNETT H. YOUNG, JAMES P. HELM and M. W. RIPY for appellants.

STOLL & BUSH, EMANUEL LEVY and KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing in part and affirming in part.

On the 10th day of November, 1912, appellee, William Sallee, was riding on a bicycle about one and one-half miles out of Lexington on the Harrodsburg pike, when he was overtaken by an automobile in which were appellant Howard Lothrop, Miss Harbison and Mr. Harbison. The automobile was owned by appellant, Louisville Lozier Company, of which appellant, Howard Lothrop, was president, and it was being driven by Miss Harbison from the left-hand front seat, it being a left-hand drive car. Appellant, Lothrop, was seated beside her on her right, and Mr. Harbison was in the rear seat.

The macadamized or used part of the pike at this place was thirty-one feet wide. In attempting to pass appellee on his left, the automobile struck and ran over him, from which he received injuries rendering him unconscious for four days. The wall of his chest was depressed, the muscles in his left arm were torn loose, several of his ribs were torn loose from the spine, his skull was fractured necessitating an operation to remove the pressure from the brain, in which operation two pieces of his skull bone, each the size of a half dollar, were permanently removed, and in addition an aggravation by the accident of a pre-existing varicose condition of the veins of the scrotum rendered necessary their removal, in the course of which operation it became necessary to remove permanently one of his testicles. Several lesser injuries were inflicted.

In an action in the Jefferson Circuit Court to recover for these injuries appellee recovered a judgment for $11,500.00 against the two appellants, Howard Lothrop and Louisville Lozier Company. After their motion and grounds for a new trial had been overruled, appellants prosecuted this appeal to this court.

Appellants assign as errors for which a reversal should be had the following:

1.  The damages awarded are excessive.

2.  Instructions one and six given the jury are erroneous and prejudicial.

3.  The court erred in refusing to peremptorily instruct the jury to find for both defendants.

4.  The court erred in permitting Dr. Cheatham to repeat to the jury a history of appellee's case given him by appellee at the time he examined appellee for the purpose of testifying and not for treatment.

5.  The court erred in compelling appellant, Lothrop, to answer an inquiry as to how fast he had driven this automobile upon some other occasion.

We will consider the alleged errors in the order in which they have been named.

I. *Are the damages awarded in this case, $11,500.00 excessive?*

The testimony shows the following of appellee's injuries to be permanent, although having been somewhat improved by treatment from their condition immediately following the accident, namely: Depression of the chest wall; injury to the muscles of his left arm; two holes in his skull resulting from an operation to relieve the results of the fracture, and the removal of one testicle. In addition to which there is testimony tending to show a permanent diminution of the hearing of one ear; a weakened physical condition that will not permit of his participating in athletics, or to do work, as before the accident; also the lessening of his mental ability, with the possibility, but not probability, that epilepsy may ensue as a result of the injury to his head.

It seems to us that a mere statement of these injuries to a young man twenty-one years of age, sound mentally, in good health and a student in college, is sufficient proof that the damages awarded are not excessive, certainly not such as to appear to have been given under the influence of passion or prejudice. Authorities cited by counsel for appellants and appellee are of but little value on this question, for the reason that in none of them are the injuries similar to those in this case, but fit rather the conception of appellants or appellee as to the gravity of the injuries suffered by appellee herein, about which there is, of course, wide divergence.

II. *Are instructions one and six given by the court erroneous?*

Unfortunately, we are unable to consider the instructions given by the court in this case because of the fact

that they are not made a part of the bill of exceptions. The bill of exceptions was filed in the lower court on September 19, 1914, which was the last day in the succeeding term, as previously fixed by the trial court, upon which a bill of exceptions could be filed. The court on that day "examined, approved, signed and certified" the bill of exceptions filed, and made it a part of the record. Five days thereafter appellants offered to file what is termed an amended bill of exceptions. This motion to file was submitted to the court, and on March 16, 1915, overruled. On March 18, 1915, the lower court entered the following order upon its order book:

"Upon motion of defendants Louisville Lozier Company and Howard Lothrop the amended bill of exceptions tendered herein Sept. 24, 1914, is now made part of this record for the purpose of review upon appeal without being copied in the order book."

This so-called amended bill of exceptions, which is not approved or signed by the court, contains the instructions which were no doubt given to the jury. This court has upon too many occasions held that instructions not contained in the bill of exceptions cannot be considered here, for us to abrogate that rule now. To permit an appellant to amend his bill of exceptions after it had been filed on the last day given him, and it had been approved, and the last thing done that the trial court has authority to do in the case, would render the provisions of section 334 of the Civil Code a nullity and give to the trial court the power to alter the record after it has passed beyond his control. We do not think the court had authority to make the amendment a part of the bill of exceptions, which opinion evidently was shared by the trial court for he did not attempt to do so, but simply certified appellants' motion so that same might be considered by this court.

III. *Did the court err in refusing to peremptorily instruct the jury to find for both defendants?*

We do not think it was error for the court to refuse the peremptory instruction to find for appellant, Lothrop, but that it was error not to have given it for appellant, Louisville Lozier Company. While the three occupants of the automobile, the only eye-witnesses of the accident, testify to facts fixing the responsibility for the accident upon appellee, and absolving Miss Harbison from any negligence, their testimony is contradicted by

evidence of other witnesses as to the location in the road of the place of the accident, which tends to show that appellee was run down at a point near the right hand edge of the used portion of the road, thirty-one feet wide at that place. This was evidenced by a pool of blood, collar button, a scraped place in the road as where something had been dragged, and tracks of a bicycle and automobile, all on the right side of the pike where appellee should have been and where the automobile should not have been. This evidence in connection with appellee's own testimony that he was about two feet from the right edge of the road, that he heard no signal; that when he first knew of the automobile's presence, it was almost upon him; that he immediately attempted to pull further to the right when he was struck, we think demanded a submission of the case to the jury if appellants were at the time responsible for Miss Harbison's acts.

The only evidence in the record pertinent to this question is that of appellant, Lothrop, whom appellee put upon the stand as his witness, and in so far as his testimony is relative to this question we will quote it:

"Q. On the tenth day of November, 1912, were you the president of the Louisville Lozier Company, the other defendant? A. Yes. Q. What interest, if any, did you have in the company in addition to being its president? A. I was the majority stockholder. Q. Who was on the front seat? A. Miss Harbison and myself. Q. Who was driving? A. Miss Harbison. Q. Who permitted her to drive? A. I did. Q. Who took the machine to Lexington? A. I did. Q. Who invited Mr. and Miss Harbison to ride in it? A. I did. Q. Why did you invite them to ride in it? A. Well, I was staying at their home, and I was going to town to bring Miss Harbison home from church, and it was a pretty day, and so before going to church for about a half hour we were going to take a little run in the country. Q. At that time did you have any idea of selling a Lozier machine to this family? A. Well, in a way I did. Anybody who has got enough money to buy a car I try to sell them. Q. And did you, on that day, have an idea of a probable customer in the Harbison family? A. Well, yes, sir; in a way. Q. To your knowledge had Miss Harbison driven cars before? A. Yes, she had already driven this car between five hundred and one thousand miles."

This is all the testimony in the case showing or tending to show for what purpose or in whose service the car was being used upon the occasion when the accident occurred. Unless appellant, Lothrop, was upon this occasion prosecuting the business of appellant, Louisville Lozier Company, we do not think the company would be liable for his acts. The testimony shows he was staying at the home of Miss and Mr. Harbison; that he was going to accompany Miss Harbison to church; that it was Sunday morning; that Miss Harbison had operated this identical car between five hundred and a thousand miles, and this testimony seems to prove that he was a guest at the Harbison home, engaged merely in a social pleasure at the time of the accident, and that the mere fact he did at that time have an idea of a probable customer in the Harbison family was not sufficient evidence upon which to submit to the jury the question of the Lozier Company's liability. As we view it, there is nothing in any of that testimony to support a finding by a jury that Lothrop was at the time of the accident in any wise engaged in the business of the company, and, therefore, we conclude it was error to refuse the peremptory for appellant, Lozier Company. As to appellant Lothrop's liability, if the accident resulted from the negligence of Miss Harbison, we have not been cited to nor been able to find any similar case in Kentucky. In the three following cases, Wm. Hartley v. Frank P. Miller, Mich., 33 L. R. A. (N. S.), 81; Geiss v. Twin City Taxicab Co., Minn., 45, L. R. A. (N. S.), 382, and Kayser v. Van Nest, Minn. 51, L. R. A. (N. S.), 970, somewhat similar circumstances to those in the present case are involved and the discussions of the principles of law affirmed therein indicate clearly the doctrine applicable to the present case.

In the Hartley case the owner of an automobile is held not liable for its negligent use to the injury of a stranger by one to whom he had loaned it, and who was in complete control of its operation, although the owner was at the time of the accident present in the machine as a guest. This case is so nearly similar to the one we are trying, that at first blush, it seems conclusive that Lothrop would not be liable for the negligence of Miss Harbison, but upon examination it will be seen that in the Hartley case the machine was completely out of the control of the owner, and was not be-

ing used in the furtherance of his purposes or undertakings. He was simply a guest, and as much without responsibility as if he had not been the owner of the machine. In the present case Miss Harbison was the guest of Lothrop, and the machine was being used in the furtherance of his purposes and undertakings.

In the Kayser case it was held that:

"Defendant's daughter, while operating the car by his authority and upon his business, was defendant's servant within the meaning of the rule, and he was responsible for her acts to the same extent that he would have been responsible for the acts of any other servant. Defendant might properly make it an element of his business to provide pleasures for his family; and, as the car was intended for the use of the members of the family for purposes of pleasure as well as for other purposes, and the daughter had authority to take it and operate it for such purposes, it was at least a question for the jury whether, at the time of the accident, she was not the servant of defendant, and engaged upon the business of defendant."

And again in the same case:

"Defendant contends that, even if he is responsible for the acts of his daughter, he is not responsible for the acts of the third party who was operating the car at the time of the accident. The daughter remained in the car, and, although not personally operating it, had not relinquished control over it, nor turned it over to another to use for his own purposes. It was still being used in furtherance of the purposes for which she had taken it out. That the mere fact that the person authorized to operate the car permits another to operate it temporarily does not absolve the owner from responsibility, under such circumstances, has already been determined in Geiss v. Twin City Taxicab Co., 120 Minn., 368, L. R. A. (N. S.), 382, 139 N. W., 611, and the cases there cited.

"The issues should have been submitted to the jury, and the order appealed from is reversed."

Numerous cases are cited in each of the above cases in all of which the doctrines announced harmonize, and fix the responsibility upon the party whose purposes and undertakings are being served at the time of the accident. The automobile in the present case was clearly being used in the furtherance of purposes and undertak-

ings of the appellant, Lothrop, so as to constitute Miss Harbison his agent, and to render him responsible for her negligence, if any.

IV. *Did the court err in permitting Dr. Cheatham to repeat to the jury a history of appellee's case given him by appellee at the time he examined appellee for the purpose of testifying and not for treatment?*

This was clearly error upon the part of the trial court as is conceded by counsel for appellee, but in our judgment it was not a prejudicial error. Every fact thus related to Dr. Cheatham by appellee, and repeated by the witness to the jury, had previously been testified to by the appellee himself, and two other physicians, who are not contradicted by any witness who testified in the case. We cannot therefore believe that this repetition by Dr. Cheatham, of competent and uncontradicted testimony, could have prejudiced appellants' substantial rights, although its repetition by Dr. Cheatham over appellants' objection was clearly erroneous. 147 Ky., 512; 134 Ky., 461; 150 Ky., 241, and 151 Ky., 313.

V. *Did the court err in compelling appellant, Lothrop, to answer an inquiry as to how fast he had driven this machine on some other occasion?*

We think so. Appellant had given the size as expressed in horse power, and the weight of the machine; and we do not think it was a competent question as to how fast appellant had driven it on other occasions, but we do not think it was prejudicial to appellant, because the uncontradicted testimony of both appellant and appellee and at least two other witnesses proved that the machine was being driven at the time of the accident at a rate of from twelve to fifteen miles an hour.

Wherefore, the judgment is affirmed as to appellant, Howard Lothrop, and reversed as to the appellant, Louisville Lozier Company, with directions to grant it a new trial and for proceedings consistent herewith.