## Marsee et al. v. Bates.

(Decided June 20, 1930.)

WILLIS W. REEVES for appellants.

C. A. NOBLE and J. T. BOWLING for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

T. G. Bates brought this action against J. D. Marsee and wife to recover for an injury to himself and car in an automobile accident. On the trial of the case there was a verdict and judgment for him for $1,500. The defendants appeal.

Lothair is above Hazard on the Kentucky river. Marsee and wife lived at Hazard, but Marsee held a position at Lothair. Bates also lived at Hazard and was a traveling man, riding in a Ford. The state highway passing through Lothair makes a curve at the Baptist Church and about 400 feet from the Perry Mercantile Building where Marsee did business. Mrs. Marsee came out to take her husband home; he was standing on the platform of the Mercantile Building, and she stopped near him on that side of the road. He and a friend got into the car. While this was going on, Bates came around

the curve at the Baptist Church in his car, and he states what followed thus:

"We were coming towards Hazard around the curve at the Baptist Church. There was a Ford coupe setting on the left hand side of the road, headed up the river, at the Mercantile Building and as I got half way the distance between the curve and the Mercantile Building this car started moving toward me on the opposite side of the road and I must have been in about a hundred feet of the car. I blew my horn and the other car turned around and came out to about the middle of the center of the road and kind of hesitated as though they were going to back out toward the front of the building. I was going about fifteen miles an hour; I saw I couldn't pass the car on the right hand side and I didn't have enough room to dodge it on the left hand side and I saw a woman in the car and to prevent hitting the car right straight in the side that way I stepped on the brake all I could and went over in the ditch and as my car went over in the ditch it turned over."

Bates received a serious cut about the eye and other bruises on the body and the car was considerably broken up.

On the other hand, Marsee and his wife, and the friend who was with them, testify substantially to these facts: When Mrs. Marsee stopped the wheels were cut to make a turn back towards Hazard; the engine was running. When she stopped, Robert Owens, the friend, first got in the car, then Marsee got in. He looked up the highway and saw a car approaching over four hundred feet away and said to his wife, "Yonder comes a car." Owen said, "We have got plenty of time to beat it." They began making a U-turn in the road, which they completed without being touched by the other car, and didn't know that anything was wrong until they looked back and saw that the car had turned over. They all agree that no signal was given of the U-turn by motion of the hand or in any other way. Mrs. Marsee says they made the turn in fifteen or twenty seconds and they all say that they made the turn immediately and did not proceed up the pike, as Bates testified, before making the turn. At fifteen miles an hour Bates would run 440 feet in twenty seconds.

Bates' testimony was confirmed by a friend of his who was in his car with him, but was not injured. On this evidence the court gave the jury this instruction:

"1. It was the duty of the defendant, Mrs. J. D. Marsee, in charge of and operating the defendants' automobile in the evidence referred to, as she operated same, before turning, stopping or changing the course of said vehicle and before turning said vehicle when starting the same to see first that there was sufficient space for such change or turn to be made in safety, and to see if the movement or operation of other vehicles might be affected by such change, and it was her duty to give plainly visible signals to the plaintiff of her intention to change, turn or stop by the use of her hand and arm and by the electrical device on said car known as a horn.

"1a. The court instructs the jury that it was the duty of the defendant, Mrs. J. D. Marsee, before making the turn in the road referred to in the evidence and pleadings, to indicate such intention to so turn said car by extending the hand and arm horizontally from and beyond the side of the vehicle toward which the turn was to be made, or by extending the hand and arm upwardly at an angle of forty-five degrees or greater from the horizontal from the side opposite the direction towards which the turn was to be made, and that the failure on the part of the said defendant to so do, if she did fail to so do, was negligence in itself."

The instruction was apparently given under subsection 50, section 2739g, Kentucky Statutes, which provides:

"Every person operating a vehicle on any public highway before turning . . . such vehicle when starting the same, shall see first that there is sufficient space for such change or turn to be made in safety, and if it appears that the movement or operation of another or other vehicles may reasonably be affected by such change shall give plainly visible signals to the operator of such vehicle of his intention to change, turn or stop by the use of his hand and arm or of an electrical or mechanical device approved by the commission, and shall use the following positions of the hand and arm in announc-

ing his intentions: (1) Intention to turn such vehicle toward the right or toward the left shall be indicated by extending the hand and arm horizontally from and beyond the side of the vehicle toward which the turn is to be made, or by extending the hand and arm upwardly at an angle of forty-five degrees or greater from the horizontal from the side opposite the direction towards which the turn is to be made."

It will be observed that by the statute the duty to give the signals is imposed "if it appears that the movement or operation of another or other vehicles may reasonably be affected by such change." The instruction of the court did not submit this question to the jury.

It will also be observed that the statute provides that the signal may be given by the use of the hand or arm "or of an electrical or mechanical device approved by the commission." The following words, "and by the electrical device on said car known as a horn," in the instruction should not have been used. Under the statute the signal may be given either by the hand and arm or by the electrical or mechanical device. Both are not required by the statute. The electrical or mechanical device is a mechanical substitute for the hand, many of which are in common use on cars. It has no reference to the blowing of the horn.

Instruction 1a concludes with these words, "and that the failure on the part of the said defendant to so do, if she did fail to so do, was negligence in itself." These words should have been omitted. The defendants admitted that no signal was given by the hand or arm or otherwise. It was also admitted that they saw plaintiff's car approaching. Whether in the exercise of ordinary care they should have made the turn as they made it, without any signal, as provided by the statute, was the question to be decided by the jury. In lieu of the instruction 1—1a, above quoted, on another trial if the evidence is the same the court will give the jury this instruction as No. 1:

"It was the duty of the defendant on the occasion in question not to turn her car until she saw that there was sufficient space for such turn to be made in safety, and if it appeared that the movement or operation of plaintiff's car might reasonably be affected by such turn, to give plainly visible signals

to the operator of plaintiff's car by the use of her hand and arm or of an electrical or mechanical device approved by the commission, and if you believe from the evidence that defendant failed in the performance of either of these duties, and by reason thereof plaintiff or his car was injured, you will find for plaintiff, unless you find as in instruction No. 4.''

Instruction No. 5 will be omitted. The other instructions given by the court properly submitted the issues in the case to the jury. The conclusion reached in Wells v. King, 219 Ky. 201, 292 S. W. 777, has no application here; for under the evidence for the plaintiff, until the car was turned he had no reason to apprehend danger from it on the other side of the road. Bates alleged in his petition that his car was duly licensed; this was denied by the answer and there was no proof on the subject. The issue was immaterial. Moore v. Hart, 171 Ky. 725, 188 S. W. 861; Prichard v. Collins, 228 Ky. 635, 15 S. W. (2d) 497. A person suddenly placed in danger may not in an emergency follow the wisest course, but he may recover if he exercised ordinary care, and under the proof this is a question for the jury. Wilder v. Cadle, 227 Ky. 489, 13 S. W. (2d) 497; Creasy v. Burch, 232 Ky. 56, 22 S. W. (2d) 446. The allegations of the petition which charged that defendants' car was negligently operated, and that the plaintiff's injury was caused by defendants' negligent operation of their car, were sufficient. Chiles v. Drake, 2 Metc. 146, 74 Am. Dec. 406; Hart v. Roth, 186 Ky. 535, 217 S. W. 893, and cases cited. The motion for a peremptory instruction for the defendants on the evidence was properly overruled; there was sufficient evidence of injury to the plaintiff and to his car to take the case to the jury, and there was no error in the admission or rejection of evidence. As Marsee was in the car with his wife, he is liable for her negligence in driving the car, if she was negligent, independently of the family purpose rule; for she was acting in his presence and by his authority, taking him home.

Judgment reversed, and cause remanded for a new trial.