## Thomas et al. v. Dahl et al.

March 19, 1943.

Woodward, Dawson & Hobson for appellants.

Edrington & Redmon for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The judgment is for $7,336.75 damages for personal injuries of John Dahl, Jr., a 12-year old boy, suffered in the collision of his bicycle and a grocery delivery truck of the appellant, Jerry Thomas, on July 25, 1941. The accident occurred in a public alley running north and south, parallel with and between Southern Parkway

and Third Street, in Louisville. Both sides of the alley are lined with garages and entrances to the rear of the residences. There is a private driveway between two of these residences from Southern Parkway to the alley, entering it from the west. A concrete block garage on the northwest corner of the intersection obstructs the view towards the north on the alley and the west on the driveway. Dahl and another boy, Louis Gagel, had been chasing each other on their bicycles in the game of "Catchers," but they testified they had stopped playing and were on their way home. They went through the driveway with John in front and Louis a few feet behind him. As John came into the alley he was riding slowly because of some cinders or gravel in the way and the obstructed view. Before entering, he came almost to a stop and looked up and down the alley. He saw the appellant's truck coming to his left from the north two or three doors (about 100 to 150 feet) and judged that the truck would not get to him so soon that he could not safely enter the alley and turn to his left on the side to go north toward his home. He peddled fast when he saw the truck coming so fast but the bicycle and truck collided when he was a little beyond the center of the alley and about 20 feet south of the corner of the garage. As he went across the alley he cut across to his right first and then turned slightly to his left to the north, the direction from which the automobile was approaching. The collision was with the front of the bicycle and the right front fender of the automobile. It was so violent that it threw the boy up against the windshield and shattered it. He was severely injured, his skull, arm and leg being fractured. The immediate admissions of the driver of the truck, the appellant, William E. Coke, that he was going 30 miles an hour and the circumstances, particularly the lengthy skid marks on the paving of the alley and the violence of the impact, indicate that he was driving in excess of statutory speed limits. The garage sets back about two feet from the paving in the alley, which is 15 feet wide, and it was proved by test that a driver of a car going as was this truck when 60 feet away can see a person at the exit of the private driveway.

The defendants' evidence is that the truck was going about 20 miles an hour and was on the west or proper side of the alley, with the driver keeping a proper look-

out. Coke testified the boy emerged from the driveway and into his view when only 15 feet away and that he did everything possible to avoid the collision by putting on his brakes and swerving to his left. It was proved that the two boys had stated before the trial that they were still playing ''Catchers'' as they came into the alley and that the injured boy had not stopped, thereby tending to prove they were intent upon their game and that the plaintiff had not been vigilant.

The appellants claim they were entitled to a peremptory instruction absolving them from liability. A bicycle is a vehicle and a public alley a highway within the definitions of the statute at that time. Section 2739g-1, Ky. Stats. The driver of a vehicle about to enter a highway from a private driveway must yield the right of way to all vehicles approaching on it. Sec. 2739g-37, Ky. Stats. (now KRS 189.330). The Traffic Code of Louisville, Ordinance No. 435, compilation of 1939, likewise gave the truck the right of way. The appellants submit that the plaintiff's disregard of this duty to yield the way was the sole cause of the accident. It is argued the evidence of excessive speed of the truck had no causal or contributing part.

It seems to us that it was proper to submit to the jury the questions of primary negligence, contributory negligence and secondary negligence. Statutes prescribing the duty to yield the right of way to vehicles on a favored highway do not give the driver thereon the absolute and unqualified right to go ahead. It is a relative preference. The preferred driver has the right to assume, although not with implicit impunity, that the other driver about to enter his path of travel from a private driveway will yield to him; yet there remains the duty at all times to exercise reasonable care to avoid collision with other vehicles, and he cannot ignore their presence or possible presence. The duty to yield the right of way may depend upon whether the driver traveling at a lawful rate of speed is so close to the intersection that a prudent person under the circumstances would not have reasonable ground to believe he might safely enter the highway and would not come within the zone of danger. The driver on the subordinate way or street is required to slow down or stop and let the vehicle on the superior way pass when their positions are such that a reasonably careful man might otherwise be in doubt

as to which should go first.  Sec. 149, 151, Huddy, Automobile Law.  As is well said in Shuman v. Hall, 246 N. Y. 51, 158 N. E. 16, 17, (Note, Sec. 150, Huddy):

"The vehicle having the subordinate right must not take chances, make close calculations, try to slip by on a chance; it must give way to the vehicle on the right when it is anywhere near the crossing.  Only in this way can these serious accidents be avoided.  On the other hand, the statute cannot be pressed too far.  The intersections of all streets and highways are so numerous that one driver must rely upon the prudence and carefulness of another.  No one driver is to obey the rules; all must obey them.  The driver coming from the right is equally obliged to exercise care.  He also must look out for vehicles coming from his right, so that as he approaches the intersection he must have the same control of his car, and approach it with the same degree of care as is required of the driver coming on his left."

This is in accordance with terms and tenor of Sec. 2739g-37 Ky. Stats. (now KRS 189.330), and our construction of it.  Woods v. Jaglowicz, 235 Ky. 637, 32 S. W. (2d) 1; Sweazy v. King, 248 Ky. 432, 58 S. W. (2d) 659; Saxton v. Tucker, 280 Ky. 777, 134 S. W. (2d) 590.

The instruction defining the plaintiff's duty to have yielded the right of way to the automobile made it absolute and without qualification, and was to that extent too favorable to the defendants.  See clause (d) of Instruction No. 1, approved in Sweazy v. King, supra, published as Sec. 128, Stanley's Instructions to Juries.

The boy's testimony was that he practically stopped and had only 8 or 10 feet to go to reach the safe side of the alley, with the automobile 100 to 150 feet away.  The evidence tended to show that the automobile was being driven at an unreasonable speed through the alley, lined as it was on both sides with garages, gates and driveways, from which someone might be expected to emerge at any time, and, although less satisfactorily, that he may have been in the center instead of on the right side.  These circumstances, coupled with the evidence of the boy that he saw the car so far away that it could be said that in the exercise of ordinary care and the observance of his statutory duties the driver might have avoided the

collision originally or in a last clear chance, were enough to authorize the submission of the issues to the jury.

The first instruction submitted the question of the defendant, breach of their duties: (a) To have the truck under reasonable control; (b) to drive it in a careful manner and at a reasonable rate of speed, not exceeding 25 miles an hour; (c) to keep a lookout; (d) to drive on the right side of the alley wherever possible and unless the left side of the alley was clear of all other traffic for 150 feet; and (e) to give warning of the approach of his truck by sounding the horn if necessary.

It will be observed that clause (b) stated it to be the duty of the defendants to drive at a speed not exceeding 25 miles an hour. This statement of a duty to observe an absolute maximum rate of speed was based upon Sec. 2739g-86, Ky. Stats., prescribing the legal rates of speed of trucks according to their weight and the conditions of the road. That section is a part of an Act of 1932, and in Hopper v. Barren Fork Coal Co., 263 Ky. 446, 92 S. W. (2d) 776, and later cases, we held its enactment had the effect of repealing so much of the previously enacted Section 2739g-51, prescribing as prima facie unreasonable certain speed under certain conditions of all motor vehicles, as it related to trucks. Thus, the speed prescribed for trucks was absolute and driving faster was a violation of the law and ipso facto negligence, while the speed prescribed for other vehicles was that it should be reasonable under the circumstances, with a presumption of negligence arising from a speed faster than the rates there stated. In 1938, the Legislature, by Chapter 106 of its acts, materially amended the motor vehicle statutes in several instances. It repealed and re-enacted Section 2739g-51 of the Statutes (KRS 189.390), and provided prima facie rates of speed for every vehicle without regard to classification, except that it expressly excluded municipal, fire, police and hospital vehicles. In National Linen Supply Co. v. Snowden, 288 Ky. 374, 156 S. W. (2d) 186, we construed the Act of 1938 to be applicable to trucks where the special conditions therein described existed, rather than Sec. 2739g-86. The condition shown in this case is among them. The act is broad and comprehensive in its terms. The specific mention of fire, police and hospital vehicles as excepted from its provisions is significant. Under the maxim expressio unius est exclusio alterius, we are of

opinion that the Legislature did not intend to except cars of any other kind. We conclude, therefore, that the Act of 1938 had the effect of repealing Sec. 2739g-86. Therefore, the instruction relating to the speed of the truck was erroneous. It should have been in accordance with the terms of Sec. 2739g-51, Ky. Stats., as enacted in 1938.

We cannot agree with the appellants that clause (d) is erroneous in stating it to have been the duty of the driver of the truck to keep to the right side of the alley, because it was admitted that he drove over to the left side in an effort to avoid or avert the collision with the bicycle, in discharge of his legal duty to choose what appeared to him to be best in the emergency. It is true that the failure of a driver to keep to the right of the center of the highway is excused where it is without fault on his part. But the instruction is in the customary form and submitted the duty to be as prescribed by the statute. As reasonable and sensible men the jury could not have failed to understand that the absolute and positive statement was qualified by its practical application and by the provision of the last clear chance instruction that if the driver saw or should have seen, in the exercise of ordinary care, plaintiff's position of peril it was his duty to have changed the course of his car, slackened its speed or stopped it in time to have avoided injury to plaintiff.

We are of opinion that clause (c) imposing the duty upon the driver to sound his horn if necessary should not have been given. There is no public intersection along the way, and we do not regard it as incumbent upon one to sound his horn continually in anticipation that someone might suddenly emerge from the side of the alley into his path. The plaintiff had testified to having seen the truck some distance away so that the duty to him to sound the horn did not arise. Elliott's Gdn. v. Bernauer, 248 Ky. 423, 58 S. W. (2d) 632; Consolidated Coach Corporation v. Bryant, 260 Ky. 452, 86 S. W. (2d) 88, 89; Barr v. Searcy, 280 Ky. 535, 133, S. W. (2d) 714.

For the errors in the instructions, the judgment is reversed.