Thomas Scott SILER, Appellant,

v.

Elsie WILLIFORD, Appellee.

Court of Appeals of Kentucky.

Oct. 13, 1961.

Robert J. Watson, Middlesboro, for appellant.

Wm. S. Tribell, Middlesboro, John James Tribell, Pineville, for appellee.

STANLEY, Commissioner.

This is an appeal from a judgment for $6,741 for personal injuries and hospital and medical expenses resulting from an automobile collision. The grounds for a reversal appear in the course of the opinion.

The plaintiff, now appellee, Mrs. Elsie Williford, an employee at the Miners Memorial Hospital in Middlesboro, went off duty about 12:30 a. m. October 5, 1959. Her husband was waiting for her at the employees' entrance to take her home. She got into the automobile driven by her husband, Hugh Williford. A two-lane curving and upgrade driveway from the hospital enters the north side of Cumberland Avenue at right angles. The night was "medium foggy," as one witness described it. The plaintiff testified her husband stopped the car before entering the street. They saw the headlights of a car coming from the east. "When we drove out almost onto the highway, or it seems to me like it was, we were facing these headlights," then there was a crash. Hugh Williford testified he saw the headlights of the approaching car and stopped before entering the street. The defendant's car "looked to be 1,500 or 1,600 feet away and I pulled out and the crash happened." The witness estimated the car was traveling 80 or 90 mph but qualified the estimate by saying that when he entered the avenue "I couldn't tell then but just before we crashed I seen it was coming awfully fast and I couldn't do nothing then."

The defendant, Siler, was a policeman driving a city cruiser car. Another officer, Eugene Harold, was with him. They testified that their car was traveling on the right side of the street 50 or 55 mph, and when they were 600 feet from the hospital entrance or exit they saw the plaintiff's car in the driveway when it was 300 feet from the avenue. It never stopped. The defendant's car was about the middle of the intersection when plaintiff's car crashed into the side of it. Both witnesses testified positively that the plaintiff's car did not stop before entering the street but came right out in front of their automobile.

We conclude the issue of the defendant's negligence was for the jury to resolve under proper instructions

The instruction submitting the question of the defendant's negligence defined his duties in regard to exercising ordinary care, control of the machine and lookout. A paragraph stated his duty to operate the automobile in a reasonable and prudent manner, having regard for the traffic and condition of the highway, weather conditions and visibility "and in no event in excess of 35 mph" subject to an "unless" provision.

The appellant contends there was no evidence warranting the qualification of speed of 35 mph, hence, the inclusion of that rate in the instruction was error. The accident happened on a city street at a hos-

pital exit. The applicable statute, KRS 189.390, declares that for an ordinary automobile any speed in excess of 35 mph in any business or residential district shall be unlawful. That part of the instruction is correct. Roberts v. Taylor, Ky., 339 S.W. 2d 653.

There was no evidence whatever that at the time of the accident the police car was responding to an emergency call. Nevertheless, the court conditioned the instruction on speed by an "unless" provision that if the jury believed that at the time of the collision the defendant was responding to an emergency call, the speed limit of 35 mph did not apply, but in such circumstance the driver was subject to the duties prescribed by subsection (6) of KRS 189.-390. This qualification of the speed instruction ought not to have been given, for there was no evidence on which to base it. The qualification was probably not prejudicial to the defendant's substantial rights, but in view of the reversal of the judgment on another point we need not decide whether it was or not.

Following the instruction defining the duties of the driver of the automobile in which the plaintiff was an occupant the court instructed that his negligence, if any, should not be imputed to the plaintiff unless the jury believed her husband was her agent, or "that there was community of interest and equal right, express or implied, to control the management and the automobile in which they were riding." The conclusion of the instruction was a converse. The verdict found the husband was also negligent but the plaintiff was not responsible.

The form of this instruction is bad. It does not give any guide for the jury to determine agency or what is "community of interest." But greater error than the form is the error in submitting an issue of agency at all.

In the course of her testimony Mrs. Williford stated, "We had my son's automo-bile." She gave his name, Daniel Monty Williford, and said he was in the armed forces in Korea. On cross-examination she testified the car had been purchased from the Dalton Motor Company. Hugh Williford testified his son was the owner, but the bill of sale was to his wife. At that time the son, he "believed," was seventeen years old.

The defendant proved by the proprietor of the motor company that he had sold the car "directly to Mrs. Elsie Williford." The witness had no memory of having talked with her son about the sale. The county clerk testified that Mrs. Williford's conditional sales contract was filed in the clerk's office on June 29, 1957, and that the car was licensed in her name.

The registration of an automobile is prima facie but not conclusive evidence of title in the party in whose name the car is registered. The same may be said in regard to the licensing of the car for operation on the public ways. Wright v. Clausen, 263 Ky. 298, 92 S.W.2d 93; Vansant v. Holbrook's Adm'r, 285 Ky. 88, 146 S.W. 2d 337; Lever Brothers Co. v. Stapleton, 313 Ky. 837, 233 S.W.2d 1002. Like all presumptive evidence, the matter of ownership in another person may be refuted. When there is competent and sufficient rebuttal evidence, ownership becomes a question of fact for the jury to determine. Wright v. Clausen, supra; 5A Am.Jur., Automobiles and Highway Traffic, §§ 63, 1008, 1009; 60 C.J.S Motor Vehicles § 42, p. 179. The decisions of the various courts are lacking in harmony as to the type or quality of evidence sufficient to overcome the presumption of ownership or to raise the issue, as is reflected in the texts cited and in Annotations 7 A.L.R.2d 1347; 27 A.L.R.2d 167.

KRS 186.020 denies the right of the "owner" of a motor vehicle (other than certain immaterial classes) to "operate it or permit its operation upon a highway" until he shall have had it registered with the

county clerk of his resident county. The statute provides that the owner's bill of sale and other evidence of ownership and title must accompany the application or registration. KRS 186.200 provides that no person "shall sell, trade, transfer or deliver any motor vehicle without at the same time making a bill of sale" to the purchaser. KRS 186.190(3) prohibits the sale or purchase or transfer of a motor vehicle without the endorsement of the owner and delivery to the purchaser of the clerk's receipt for the registration fee for the current year. Subsection (5) makes it the duty of the purchaser to have the endorsed original registration receipt and a copy of the bill of sale filed with the county clerk. Since these statutes are police measures and regulatory in character, neither compliance nor noncompliance with their terms, although persuasive, is regarded as conclusive of the question of title. Moore v. Wilson, 230 Ky. 49, 18 S.W.2d 873.

■ In Wright v. Clausen, supra, 263 Ky. 298, 92 S.W.2d ·93, 94, where a plaintiff was injured while riding in an automobile, shown by the bill of sale and license registration to have been owned by her, the plaintiff's "bare statement that she did not own the car," without any facts or explanation tending to show she was not vested with title to the car, was held not sufficient to contradict the records. We held it was proper for the court to rule as a matter of law that the plaintiff was the owner and to decline to submit the issue of ownership to the jury.

In the present case we have the mere statements of the husband and wife that the car "belonged to" their son. No evidence was offered that the son ever had possession of the automobile or had exercised domain over it or how he came to have title. We deem this testimony so lacking in probative force as not to refute the presumption arising from the documentary records of ownership by the plaintiff.

We are of opinion the court should have so ruled and have predicated the contributory negligence instruction upon the ownership of the car by the plaintiff, as was done in the Wright case.

■ We come to the question of responsibility of the plaintiff for any contributory negligence of her husband. In Marsee v. Bates, 235 Ky. 60, 29 S.W.2d 632, a wife had gone in her husband's automobile and was taking him home from work when an accident occurred. The court held that as the husband was in the car with her, he was liable for her negligence, if any, in driving the automobile, for she was acting in his presence and by his authority in taking him home. In Challinor v. Axton, 246 Ky. 76, 54 S.W.2d 600, a wife, who was the owner and an occupant of the car being driven by her husband, was injured when the car turned into a driveway of their home and was struck by another automobile traveling on the highway. As in the instant case, the defendant pleaded contributory negligence on the part of both the wife and the husband in the wife's action for damages. We held that as the car was being driven by the husband with her consent and acquiescence on a mission as much for her benefit as for her husband's, the instruction which imputed his negligence to her was correct. Several supporting authorities are cited. As above recited, Wright v. Clausen, supra, recognizes the same rule of liability. These cases are in accord with the general holding that the doctrine of respondeat superior applies where the owner is present and the automobile is being operated in and about the owner's business or pleasure or for the mutual benefit of the owner and the driver. 60 C.J.S. Motor Vehicles § 428, p. 1054.

Instruction No. 4 submitted the question of the negligence of Hugh Williford in failing to stop before entering upon a through highway and yield the right of way to a vehicle approaching so closely as to constitute an immediate hazard. This is in accordance with KRS 189.330(4). The defendant maintains that this was too favorable to the plaintiff, for the instruction

should have followed the terms of KRS 189.330(7) (formerly KRS 189.330(6) before the 1960 amendment). That subsection requires that a driver about to enter a highway from "a private road or driveway shall yield the right of way to all vehicles approaching on the highway." Thus, there is no condition as to an "immediate hazard" as in subsection (4), which relates to inferior and superior public ways. Prima facie subsection (7) imposes the absolute duty upon a motorist about to enter from a private driveway to yield the right of way. Some of our cases involving collisions of cars emerging from private driveways have not noted the distinction between subsection (4) and (7). But in Thomas v. Dahl, 293 Ky. 808, 170 S.W.2d 337, 339, where a bicyclist coming out of a driveway was struck by an automobile in a public alley, we noted that the matter of who has the right of way is relative, notwithstanding the literal language of the statute. We wrote:

"The preferred driver has the right to assume, although not with implicit impunity, that the other driver about to enter his path of travel from a private driveway will yield to him; yet there remains the duty at all times to exercise reasonable care to avoid collision with other vehicles, and he cannot ignore their presence or possible presence."

This is in accord with the construction of KRS 189.570(2) providing that the operator of an automobile shall yield the right of way to a pedestrian within a marked cross walk or at an intersection. See Whittaker v. Thornberry, 306 Ky. 830, 209 S.W.2d 498; Fields' Adm'x v. Snelling, Ky., 266 S.W.2d 302.

It was held in Thomas v. Dahl, supra, that the instruction defining the bicyclist's duty to yield the right of way to the automobile as being an absolute duty was too favorable to the defendants. The same interpretation of the statute was recognized in McCoy v. Clark, 309 Ky. 841, 219 S.W.2d 50; Brumbach v. Day, Ky., 260 S.W.2d 939; Couch v. Hensley, Ky., 305 S.W.2d 765.

The defendant offered an instruction based upon subsection (7), that it was the duty of the driver of the plaintiff's car to yield the right of way to vehicles approaching "and not to proceed into Cumberland Avenue until they could do so with reasonable safety to traffic moving in either direction on said Cumberland Avenue." This followed the language used in McCoy v. Clark, supra. (See § 116, Stanley's Instructions to Juries.) In that case Clark, who had come out of his driveway, sued McCoy, who was driving on the highway, and McCoy counterclaimed for damages. The instruction which the court held was "in keeping with the statutes" related to the duty which Clark owed McCoy.

It was admitted by the plaintiff and her driver that they had seen the defendant's automobile as it was coming at a rapid speed 1,500 feet or more before it would reach the driveway exit. Williford was, therefore, bound to yield the right of way to the automobile until in the exercise of ordinary care there was no danger of a collision. Woods v. Jaglowicz, 235 Ky. 637, 32 S.W.2d 1; Bettis v. Rickett, Ky., 310 S.W.2d 775. Upon another trial, if the evidence is substantially the same, we believe an instruction on this point in the following form will be proper: It was the duty of the driver of the plaintiff's automobile, Hugh Williford, before entering Cumberland Avenue to yield the right of way to the defendant's approaching car and not attempt to enter the street if the car was so near that Williford could not by the exercise of ordinary care avoid the collision. If you find from the evidence that Williford failed to observe that duty and thereby contributed to bring about the collision and but for such failure it would not have occurred, you will find for the defendant, Siler.

The judgment is reversed.