JOHNSON–KITCHENS FORD CORPORATION and Roy Lee Townsend, Appellants,

v.

F. W. SHIFFLETT, Appellee.

Court of Appeals of Kentucky.

May 29, 1970.

Rehearing Denied Feb. 19, 1971.

Ben L. Kessinger, Jr., Harbison, Kessinger, Lisle & Bush, Lexington, William J. Parker, Harlin, Parker, Ricketts, Lucas & English, Bowling Green, Jesse L. Riley, Jr., James C. Lyne, Russellville, for appellants.

G. S. Milam, James C. Milam, William G. Fuqua, Russellville, for appellee.

STEINFELD, Judge.

Appellee, F. W. Shifflett, was standing near a parked automobile in Russellville, Kentucky, on May 21, 1967, when it was struck by an automobile owned by appellant, Johnson-Kitchens Ford Corporation, and operated by Thomas William Kees. Appellant, Roy Lee Townsend, was riding in the car driven by Kees. Shifflett was seriously injured and recovered judgment in the amount of $100,000, jointly against Kees, Townsend and the corporation. Only the corporation and Townsend appeal. We reverse as to the corporation and affirm as to Townsend.

The corporation is engaged in the business of selling motor vehicles. James Johnson is an officer and a substantial stockholder. Guy McMillen, a prominent citizen of Russellville and a personal acquaintance of Johnson, arranged with Johnson to borrow one of the corporation's automobiles for use in a forthcoming election. It seems to be agreed that the corporation had no intention of charging McMillen and he did not intend to pay for its use. Johnson informed the general manager of the corporation of this arrangement.

Several days later Townsend, a political worker, secured the automobile at the corporation's lot and used it on a number of occasions taking Kees with him. Kees, who had no driver's license, frequently sought permission from Townsend to drive the car but he was refused.

There is substantial conflict in the evidence as to how Kees happened to be driving and whether Townsend authorized him to drive or even knew he was driving when Shifflett was injured. Townsend said that he had no knowledge that Kees had been driving and had not given him permission to do so. He claimed that he went to sleep in the automobile three hours before the accident and did not awaken until after it occurred. One witness stated that Townsend was either asleep or had passed out due to intoxication.

Kees agreed that Townsend had not given him permission to drive; that Townsend when asked, kept saying: "Wait a minute". Kees testified that Townsend had driven for a while; Ernest Taylor then drove without objection from Townsend, and that he took over the wheel with the permission of Taylor. Kees also said that the first time he saw Townsend that day he was in the Mustang Inn across the street from Kees' home and that this occurred only 30 minutes before the accident. All agreed that Townsend was in the front seat when Kees started driving and remained there until the accident occurred and that Townsend never objected to Kees driving. The occupants of the car were " * * * talking, arguing, raising cane with each other * * *". After being arrested as a result of the collision Kees said that " * * * he had stolen the keys while Townsend was asleep * * *" and admitted that he " * * * got under the wheel and started to drive * * *".

■ There was no evidence that Townsend, Kees or Taylor were agents, servants or employees of the corporation. The corporation claims error in denying its motion for a directed verdict, contending that it is not liable for the negligent operation of the automobile by Kees.

Shifflett contends that the corporation is liable because the car was loaned to attract the favor of McMillen and to enhance the good will of the corporation. Johnson admitted that it considered such acts good for its business and that on other occasions for the same reason the corporation had loaned cars to its customers.

The parties cite many local and foreign cases and several texts to sustain their arguments that a directed verdict was or was not proper. We think it unnecessary to comment on or attempt to distinguish them as we are of the opinion that the reasoning announced in Wayne's Adm'x v. Woods, 275 Ky. 477, 121 S.W.2d 957 (1938), and the other cases we refer to is applicable here. In Wayne we said that " * * * the authorities are unanimous, * * * in holding that a dealer is not responsible, in the absence of a statute to the contrary, for injuries received by third persons where an automobile is loaned to a prospective purchaser, who is a competent driver, for trial." In Wayne the dealer had permitted a prospective customer to have the use of the car to determine whether the customer was interested in purchasing it. The opinion said that " * * * the transaction here presented was nothing more nor less than a bailment. A bailor is not responsible to third persons for the negligence of the bailee in the absence of circumstances not here presented. (citing texts and cases)." We see no distinction between the situation whereby the dealer seeks to enhance its good will by permitting others whom it has no reason to believe are incompetent drivers to use a vehicle and permitting a prospective customer to do so. Also see Louisville Lozier Co. v. Sallee, 167 Ky. 499, 180 S.W. 841 (1915), and Broadway Motors, Inc. v. Bass, 252 Ky. 628, 67 S.W.2d 955 (1933).

The facts in Paul, Adm'r v. Benavidez, 56 N.M. 328, 243 P.2d 1018, 31 A.L.R.2d 1439 (1952), were somewhat similar to

those in Wayne's Adm'x v. Woods, supra. In the Paul case the opinion quotes from Hamp v. Universal Auto. Co., 173 Wash. 585, 24 P.2d 77 (1933), saying: "If the relation between the parties was that of bailor and bailee, the owner of the automobile would not be responsible for the negligent acts of those who had the possession and use of it when the accident occurred." In Paul it was held, and we hold here, that the transaction was one of bailment and that the dealer is absolved from liability. American Fidelity & Casualty Co. v. Pennsylvania Casualty Co., Ky., 258 S.W.2d 5 (1953); Blair v. Boggs, Ky., 265 S.W.2d 795 (1954) and annotation in 31 A.L.R.2d 1445.

■ The automobile owner (with certain exceptions not involved here) is not liable to third persons for their injuries when the vehicle is not being used on the business of the owner. We announced in Packard-Louisville Motor Co. v. O'Neal, 248 Ky. 438, 58 S.W.2d 630 (1933), that:

"The owner of a motor vehicle who is operating it, or who is present controlling its operation by a third person, is liable for injuries occasioned by its negligent or wrongful operation, but in the absence of statutes imposing liability or of personal negligence upon his part, mere ownership of an automobile does not render the owner liable for an accident occurring when it is driven by another person, and he may, according to the great weight of authority, be held liable for its negligent or wrongful operation by a third person only upon principles rendering the principal or master liable for the acts of his agent or servant."

Also see Dennes v. Jefferson Meat Market, 228 Ky. 164, 14 S.W.2d 408 (1929); Home Laundry Co. v. Cook, 277 Ky. 8, 125 S.W. 2d 763 (1939); Union Transfer & Storage Co. v. Fryman's Adm'r, 304 Ky. 422, 200 S.W.2d 953 (1947); Coleman v. Blackburn, Ky., 265 S.W.2d 781 (1954) and 60A C.J.S. Motor Vehicles § 436(2), p. 998. When

the car struck Shifflett it was not being used on the business of the corporation. It is our opinion that its motion for the directed verdict should have been sustained.

■ Townsend contends that his motion for a directed verdict should have been sustained because Kees' driving was impermissible and he had no knowledge of it. The testimony of Kees was equivocal but the presence of Townsend and the evidence as a whole created a jury issue. An instruction, the form of which is not questioned, properly authorized the jury to determine if the automobile " * * * was being operated with the actual or implied knowledge, consent or permission of defendant, Roy Lee Townsend * * * ".

In McCulloch's Adm'r v. Abell's Adm'r, 272 Ky. 756, 115 S.W.2d 386 (1938), McCulloch was a passenger in a car driven by Roberts when an accident occurred. We said: "To make McCulloch's estate liable for 'Red' Roberts' negligence it was not necessary, of course, to show actual ownership of the car by McCulloch, but sufficient to show that McCulloch was in the possession and control of the car, and that it was being driven by 'Red' Roberts with his knowledge and consent." We continued: "As there was no evidence to the contrary, and possession and control were equivalent to ownership, the court did not err in assuming that McCulloch was the owner of the car, or in telling the jury that he was responsible for the negligence of Roberts." Also see Louisville Lozier Co. v. Sallee, 167 Ky. 499, 180 S.W. 841 (1915); Marsee v. Bates, 235 Ky. 60, 29 S.W.2d 632 (1930); Challinor v. Axton, 246 Ky. 76, 54 S.W.2d 600 (1932); Supplee v. Webster, Ky., 320 S.W.2d 615 (1959) and Siler v. Williford, Ky., 350 S.W.2d 704 (1961).

■ A default judgment had been entered against Townsend because the court considered he had not timely answered. He contended that he was not in default because of an agreement for the taking of depositions which was made before the mo-

tion for the default judgment was lodged. He moved promptly to set the judgment aside. Several months later there was a hearing before the court on pending motions and without ruling on the motion to set aside the judgment the court assigned the case to trial approximately five weeks hence. On the trial date Townsend announced that he was not ready and he moved the court to delay the trial until the motion to set aside the default judgment was ruled upon, nevertheless, the court did not act until after all the evidence had been introduced when it ruled that Townsend was not in default and set aside the judgment.

He claims that he was unable to properly prepare his defense and that he was denied a fair trial. While we are of the opinion that the motion should have been ruled on before the trial began, nevertheless, Townsend knew on December 7, 1968, that the case was to be tried February 11, 1969. He was attempting to extricate himself from the predicament he was in, therefore, it was incumbent upon him to be fully prepared for trial.

■ Appellants argue that the lower court abused its discretion in failing to permit L. C. Baird to testify because he had been in the courtroom a few minutes before he was subpoenaed to testify. Baird had been in the courtroom the day before he was subpoenaed. When he took the witness stand the court sustained appellee's objection to his testifying, the exclusory rule having been imposed. The court asked the witness how long he had been in the courtroom on the day he was to testify and he said for about 30 minutes. Appellants rely upon Sanders v. Drane, Ky., 432 S.W.2d 54 (1968), in which we said in a case involving this question: "We do not think CR 43.09 should be extended to defeat good trial practice and the ultimate ascertainment of truth." Shifflett responds that there are distinguishing facts between his and the Sanders case, the main difference being that in Sanders the witness had not been in the courtroom but had read a deposition. In Stone v. Commonwealth, Ky., 418 S.W.2d 646 (1967), in which the application of CR 43.09 had been ordered, we said:

> "This section of the Rules, as well as its predecessor 601 of the previous Code, has been uniformly construed to give the trial judge a broad discretion in the matter of permitting or refusing to permit a witness to testify who has violated the rule. See Murphy v. Phelps, 241 Ky. 339, 43 S.W.2d 1010, and 88 C.J.S. Trial § 65.
>
> "* * * Certainly, we cannot say the trial judge abused his discretion. In any event, the order for exclusion was violated, and it was within the sound discretion of the trial court to allow or not permit the witness to testify."

We find nothing to indicate that the trial judge abused his discretion.

■ The jury brought in a verdict which read: "We, the jury, in the case of Fount *Shiflett* plaintiff against the defendants, Thomas William Kees, Roy Lee Townsend, Johnson-Kitchens Ford Corp. and fix the damages at $100,000.". After it was read aloud the following colloquy took place between the foreman and the trial judge.

Judge: "Do you mean by this verdict that you find against them jointly?"

Foreman: "We interpreted the procedure to be such that the Court would make the allocation of the amount of money to be allocated to each individual defendant."

Judge: "No, there won't be any allocation by the Court. According to the instructions, if you find all three of them negligent, you find against all three of them jointly. I am going to ask you to go back—"

Foreman: "And fix the amounts?"

Judge: "Did you mean to find against all three of them?"

Foreman: "All three."

Judge: "If that is what you agree after you get back in there, then you should find against these defendants and then put 'jointly' if that is what you want to find."

Foreman: "We will go back and talk about it and see if that is what they want."

The jury went into the jury room, deliberated and again returned to the courtroom. It indicated that it was having trouble phrasing its verdict. It was sent back to the jury room and was followed there by the court and counsel for all parties. The record reveals the following occurred in the jury room:

"Honorable Thomas A. Noe, Jr., Judge: Then let me ask all of you a couple of questions. Have you agreed that all three were negligent?

Foreman: We can't deny that because * * *

Judge Noe: Have you agreed on that?

Foreman: Yes, sir.

The other members of the jury also answered in the affirmative.

Judge Noe: Have you agreed upon the amount Mr. Shifflett is entitled to?

Foreman and Members of the Jury: Yes, sir.

Judge Noe: So your only question then is as to the form of the verdict. Is that correct?

Foreman: The form of the verdict, yes, sir. That is the only thing we want any information on.

Judge Noe: All right, then, I will dictate a verdict and leave it with you.

Foreman: That will be fine. We just want to be sure it is right, that's all."

To assist the jury the court prepared a form of verdict which the jury wanted and left it with the jury. Strenuous objection was made to this procedure which was overruled. Everyone retired from the jury room except the jurors. Shortly thereafter the verdict was returned upon which the judgment was entered.

To sustain the argument that the verdict cannot stand we are referred to Louisville & Nashville R. R. Co. v. Farney, 295 Ky. 8, 172 S.W.2d 656 (1943), in which we wrote:

"No matter through what channel the court has ascertained that the jury intended to make a verdict different from the one returned, it has no power to correct the mistake and enter a judgment accordingly. Under proper circumstances the jury might be recalled and allowed themselves to correct the verdict, or the court might grant a new trial, but whenever the judgment is entered it must be upon the verdict of the jury as signed and returned by them. If the judge makes the correction, though it is admitted to be then as they intended, yet that intention has never been manifested by the writing, signed by the foreman, nor have they ever been asked by the clerk, while assembled as a jury, whether the verdict as corrected was theirs. It is not sufficient that the verdict would have been different had the mistake not occurred. The appellee had no right to a judgment except upon the jury's verdict. The mistake was its misfortune. Although the court may have had the power to partially protect appellee from its consequences by refusing to render a judgment for the other side, there was no authority for altering the verdict * * *".

The distinction is that here the court made no correction or alteration. Frequently it is most helpful to a jury for the court to submit the forms of the several verdicts that it is authorized to render. Here a form was submitted without any further instructions and it was left with the jury. We concede that this was unusual and irregular but we perceive no prejudice.

Lastly, Townsend charges that the lower court abused its discretion when it permitted an amended complaint to be filed after all the evidence was presented at the trial and that this pleading raised new and additional issues. The pleading related to the claim against the corporation and it made no allegation against Townsend. He was not affected, therefore, there is no merit to this final complaint.

The judgment is reversed as to appellant Johnson-Kitchens Ford Corporation for entry of a judgment sustaining its motion for a judgment notwithstanding the verdict and dismissing all claims against it. The judgment is affirmed as to appellant Roy Lee Townsend.

All concur, except OSBORNE, J., who did not sit.